### PORTER, Adm'r, OPA, v. BLOCK.

### SAME v. SHERWOOD DISTILLING CO.

#### Nos. 5470, 5471.

Circuit Court of Appeals, Fourth Circuit.
May 23, 1946.

Rehearing Denied July 13, 1946.

Albert J. Rosenthal, Atty., and Samuel Mermin, Chief, Special Litigation Branch, Office of Price Administration, both of Washington, D. C. (George Moncharsh, Deputy Adm'r for Enforcement, and Milton Klein, Director, Litigation Division, both of Washington D. C., Kenneth V. Fisher, Regional Litigation Attorney, of New York City, and Francis Key Murray, Dist. Enforcement Atty., Office of Price Administration, of Baltimore, Md., on the brief), for appellant.

Wilson K. Barnes, of Baltimore, Md. (Carman, Anderson & Barnes, G. C. A. Anderson, Leon A. Rubenstein, and William Hoffenberg, all of Baltimore, Md., on the brief), for appellees.

Before GRONER, Chief Justice, U. S. Court of Appeals for the District of Columbia, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

### No. 5471.

The Administrator of the Office of Price Administration seeks a mandatory injunction to require The Sherwood Distilling Company to file an application for maximum prices on certain of its products which it sold in 1943 before maximum prices therefor had been established; and the Administrator also seeks to recover $296,564.-82, that is, three times the amount by which the aggregate sales prices of the goods sold exceeded the maximum prices which the Administrator alleges he would have approved if the application had been filed and the prices had been established before the sales were made. It is conceded that the allegations of the complaint show that the Company violated the law by making the sales before the application was filed and the prices were established and that this infraction could have been enjoined by timely suit and could have been the subject of a criminal prosecution; but the question remains whether under the allegations the present suit for mandatory injunction and treble damages is now tenable. The suit was dismissed by the District Court on motion of the defendant on the ground that the complaint does not state a cause of action.

The action is based primarily on §§ 205 (a) and 205(e) of the Emergency Price Control Act as amended, 50 U.S.C.A.Appendix, § 901 et seq. These sections, which empower the court to issue orders to en-

force compliance with the Act, and authorize suits against offenders for overcharges, are as follows:

Section 205(a). "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Section 205(e). "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations. Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction. A judgment in an action for damages under this subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered."

It was alleged in the first count that the defendant violated § 4(a) of the Act, and § 1420.13(a) (3) (c) of Maximum Price Regulation 193, and § 1499.3(b) (2) of the General Maximum Price Regulation in the following manner: the defendant, during the period covered by the complaint, was a processor, distributor and seller of distilled spirits and during the period between July 8, 1943 and August 26, 1943, sold and delivered numerous cases of whisky; and none of said whiskies, nor any similar whiskies, were sold or offered for sale by any one during the month of March, 1942, which was made the base period for fixing the selling price of commodities by § 1499.2 of General Maximum Price Regulation; and hence it was the duty of the defendant at least twenty days before offering the whiskies for sale to make application to the Office of Price Administration for a maximum price thereon, but the defendant made the sales without making such application.

Section 4(a) of the Act provides as follows:

"It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore, or hereafter entered into, for any person to sell or deliver any

commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing.'"

It is agreed that the regulations of the Administrator, referred to above, required that the maximum price of the whiskies alleged to have been sold by the defendant should have been established before sale in accordance with the terms of § 1499.3(b)(2) of General Maximum Price Regulation, as amended, (8 F.R. 6962), which is as follows:

Section 1499.3(b) (2). "If the seller is unable to determine a maximum price for a commodity under subparagraph (1) above or if he cannot determine a maximum price under subparagraph (1) without undue hardship, he shall, at least twenty days before offering such commodity for sale, file an application for a maximum price with the appropriate field office of the Office of Price Administration. The application shall set forth (i) a description of the commodity for which a maximum price is sought; (ii) the reasons why such commodity cannot be priced under § 1499.2 or subparagraph (1) above; (iii) the maximum price proposed by the seller together with a detailed explanation of the method by which the seller calculated such price; and (iv) the reasons why the seller believes the proposed price to be in line with the level of maximum prices established by this regulation. The seller shall also submit such additional pertinent information as the field office may require. The proposed price shall be the seller's maximum price, unless the Office of Price Administration specifically disapproves it within twenty days after the application is mailed. Any maximum price established under this subparagraph (2) shall be subject to adjustment by the Office of Price Administration at any time after such twenty day period."

It was alleged in the second count that if the defendant had made application for maximum prices for the whiskies in question, the Administrator would have disapproved any prices in excess of certain named prices and that these prices were less than those received by the defendant from the purchasers of the whiskies in the aggregate sum of $98,854.94, and hence the Administrator was entitled to a judgment on behalf of the United States under § 205(e) of the Act of three times the overcharge, or $296,564.82.

The Administrator therefore prayed the court to issue a mandatory injunction requiring the defendant to file an application for maximum prices for the whiskies sold, and further prayed that a judgment be entered against the defendant for the sum of $296,564.82. The Administrator contends that authority to take these steps is found in § 205(a) of the statute which, among other things, gives the court power to grant an injunction or other order to restrain violations of or enforce compliance with § 4 of the Act by any one who has engaged in or is about to engage in violations thereof. There is no ground for the issuance of a prohibitory injunction or order to restrain the defendant from contemplated violations in this case because the complaint, which was filed on July 7, 1944, does not charge that the defendant is about to engage in illegal acts in the future, but definitely states that the wrongful sales took place in the past between July 8 and August 26, 1943. Accordingly, the question is whether the court may issue a mandatory injunction or order to require the defendant to take the affirmative action of making application for a ceiling price on goods already sold so that the Administrator may establish maximum prices and recover three times the excess of the selling prices over the maximum prices thus established; or, in other words, whether such action on the part of the court may fairly be considered as "an order enforcing compliance" with the statute.

The argument of the Administrator proceeds as follows: The defendant violated the Act by failing to apply for a price before selling and hence the court may enforce compliance with the Act by a man-

datory order. The conditional obligation of the defendant to make an application for what it intended to sell was converted by the making of the sales into an absolute obligation to file immediately. While such belated action will not purge the defendant of its violation it will at least minimize the scope of the violation.

In support of this argument the Administrator refers to Hecht Co. v. Bowles, 321 U.S. 321, 329, 331, 64 S.Ct. 587, 88 L.Ed. 754; Bowles v. Skaggs, 6 Cir., 151 F.2d 817 and Bowles v. Carothers, 5 Cir., 152 F. 2d 603. Hecht Co. v. Bowles held that under § 205(a) the grant of an injunction by the court against one who has violated the regulations of the Administrator is not mandatory but lies within the discretion of the court, although the section provides that under such circumstances an injunction or order "shall be granted." The court pointed out that the grant of power to the court to issue an injunction "or other order" indicated the duty of the court to consider what action would be most appropriate under the circumstances; that the legislative history indicated that the courts should issue whatever order to enforce compliance was proper in the circumstances of each particular case, and that the statute should be read against the background of equity practice of which the essence is the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. The court, however, pointed out that it did not mean to imply that the courts should administer § 205(a) grudgingly and said (321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L. Ed. 754):

" * * * The Administrator does not carry the sole burden of the war against inflation. The courts also have been entrusted with a share of that responsibility. And their discretion under § 205(a) must be exercised in light of the large objectives of the Act. For the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief in these cases. That discretion should reflect an acute awareness of the Congressional admonition that 'of all the consequences of war, except human slaughter, inflation is the most destructive.' "

In Bowles v. Skaggs, 6 Cir., 151 F.2d 817, the court ordered an administrator of an estate who had sold a refrigerator for a price above the ceiling price to make restitution of the excess to the purchaser. The court suggested that such an order was "an order enforcing compliance" with the regulations and definitely held that the power of the court to impose a direction upon a seller under the phrase "or other order" should not be confined to such orders as are needed to make an injunction effective but should be construed to authorize the court to exercise the undoubted powers of a court of equity to mould its remedies to meet the needs of particular situations.

In Bowles v. Carothers, 5 Cir., 152 F.2d 603, it was found that the operators of certain parking lots were charging rates in excess of the maximum price at one lot and at other lots were keeping within the established rates, but intended to appeal therefrom, and that they were operating still other lots without reporting the prices charged as required by the Regulations. The court held that an injunction should be issued prohibiting the defendant from charging excess prices where prices had been established, and directing the defendants to file a schedule of prices where this action had not been taken.

These cases undoubtedly support the view that § 205(a) should be liberally construed in order to carry out the purpose of Congress to control prices and prevent destructive inflation; and that to this end injunctions or orders may be issued by the courts to prevent infraction of the regulations and to enforce compliance therewith by persons who have engaged or are about to engage in unlawful practices. The action of the court, however, must be directed under § 205(a) towards acts or practices which constitute or will constitute a violation of § 4 of the Act which makes it unlawful for any person to sell a commodity or otherwise do or attempt to do any act in violation of any regulation or price schedule issued by the Administrator. Thus the court has power, as was shown in

Bowles v. Carothers, 5 Cir., 152 F.2d 603, to compel a person engaged in selling goods or furnishing services to file a schedule of prices when required by the regulations to do so. We should likewise in the present case be swift to exercise the authority of the court to compel compliance with the Act by one who, according to the allegations of the complaint, has ignored the statute and defied the regulations.

But when we make this approach we are met with the practical difficulty that it is impossible to enforce compliance with the Act in the manner requested by the Administrator. Compliance by the defendant in making the sales of whiskies in the summer of 1943 would have required the abstinence from sales until the defendant had filed an application for the establishment of prices and until the prices had been established; and if the defendant were now selling or contemplating sales of the kind of goods then marketed, an order restraining the sales and compelling the filing of an application for the establishment of maximum prices would be an appropriate remedy. This, however, is not the case before the court. The defendant has already sold the goods in violation of the regulations and is not now selling or contemplating selling in an illegal manner. A present application by the defendant for the establishment of a price for the sale of goods already made will not be a compliance with the regulation which requires an application to be made before the sales take place; and the nature of the transaction will not be changed by an order of court. In short, it is not now possible for the defendant to comply with the regulation of the Administrator.[1]

It does not follow that the unlawful conduct of the defendant was beyond the reach of the statute. The defendant could have been subjected to an injunction or other order under § 205(a) during the period of its violations, and could have been indicted and punished by fine or imprisonment under § 205(b) of the statute. It is possible that an indictment for conspiracy against the defendant and its managing officers could have been sustained.[2] Perhaps the deterrent effect of these statutory provisions was deemed sufficient by the Administrator. At any rate, although he was fully clothed with power to do so, he did not prescribe the maximum prices of goods sold by one like the defendant who was in duty bound to make application for maximum prices but failed to do so; and hence such a person in 1943 did not violate a regulation or order prescribing a maximum price and was not subject to the penalty of treble damages imposed upon one who charges more for his commodities than the established price.

The question is not free from difficulty and it is well that the Administrator propounds it for decision; but we are of the opinion that the court is without power to amend the statute or to change the regulation so as to require the defendant to do after its sales that which it should have done before. In support of this conclusion it should be noted that the ultimate aim of the present suit is the imposition of the triple penalty prescribed by § 205(e) of the Act; and that the court should not read into such statutes, even when they are enacted for the public good, provisions not inserted by legislative authority. This rule has been specifically applied by the Supreme Court to the criminal sanctions of the Emergency Price Control Act in M. Kraus & Bros. v. United States, decided March 25, 1946, 66 S.Ct. 705; and the language there used is not without pertinence to the penal provisions now under consideration. The court said (66 S.Ct. 707):

---

[1] It has been said that a suit for a prohibitory injunction deals primarily not with past violations but with threatened future ones, and that such an injunction may not be employed to punish past violations or simply to establish that violations have occurred. Swift & Co. v. United States, 276 U.S. 311, 326, 48 S. Ct. 311, 72 L.Ed. 587; Walling v. Shenandoah-Dives Mining Co., 10 Cir., 134 F.2d 395, 397. We think that these statements are equally true with reference to a mandatory injunction or other order issued under § 205(a) of the statute to enforce compliance therewith.

[2] See American Medical Ass'n. v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233, 253; Standard Oil Co. v. State, 117 Tenn. 618, 100 S.W. 705, 10 L.R.A.,N.S., 1015.

270

"This delegation to the Price Administrator of the power to provide in detail against circumvention and evasion, as to which Congress has imposed criminal sanctions, creates a grave responsibility. In a very literal sense the liberties and fortunes of others may depend upon his definitions and specifications regarding evasion. Hence to these provisions must be applied the same strict rule of construction that is applied to statutes defining criminal action. In other words, the Administrator's provisions must be explicit and unambiguous in order to sustain a criminal prosecution; they must adequately inform those who are subject to their terms what conduct will be considered evasive so as to bring the criminal penalties of the Act into operation. See United States v. Wiltberger, 5 Wheat. 76, 94–96, 5 L.Ed. 37. The dividing line between unlawful evasion and lawful action cannot be left to conjecture. The elements of evasive conduct should be so clearly expressed by the Administrator that the ordinary person can know in advance how to avoid an unlawful course of action.

"In applying this strict rule of construction to the provisions adopted by the Administrator, courts must take care not to construe so strictly as to defeat the obvious intention of the Administrator. Words used by him to describe evasive action are to be given their natural and plain meaning, supplemented by contemporaneous or long-standing interpretations publicly made by the Administrator. But patent omissions and uncertainties cannot be disregarded when dealing with a criminal prosecution. A prosecutor in framing an indictment, a court in interpreting the Administrator's regulations or a jury in judging guilt cannot supply that which the Administrator failed to do by express word or fair implication. Not even the Administrator's interpretations of his own regulations can cure an omission or add certainty and definiteness to otherwise vague language. The prohibited conduct must, for criminal purposes, be set forth with clarity in the regulations and orders which he is authorized by Congress to promulgate under the Act. Congress has warned the public to look to that source alone to discover what conduct is evasive and hence likely to create criminal liability. United States v. Resnick, 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127."

The Administrator did make provision for a case of the kind now before the court on December 27, 1943 when he promulgated Amendment 9 to Maximum Price Regulation 445, effective January 6, 1944, whereby he fixed specific maximum prices for the sale of distilled spirits not sold or offered for sale by a processor during March, 1942. This action, however, was taken after the defendant's violations had occurred.

In our opinion the judgment of the District Court must be affirmed.

### No. 5470.

The Administrator of the Office of Price Administration seeks a mandatory injunction directed to the defendant to require him to make an application for a maximum price on whiskies sold by him between April 30 and August 30, 1943. The Administrator also seeks the recovery of $50,917.08, that is three times the amount by which the aggregate sales prices of the goods sold exceeded the maximum prices which the Administrator alleges he would have approved if the defendant had filed an application and the prices had been established before the sales were made. On motion to dismiss filed by the defendant the District Court denied the relief sought. The questions involved are precisely the same as those considered by this court in the preceding case No. 5471 and the judgment of the District Court is therefore affirmed.

### On Petition for Rehearing.

PER CURIAM.

### No. 5471.

The Administrator of the Office of Price Administration seeks a rehearing in this case and relies principally on the decision of the Supreme Court rendered June 3, 1946 in Porter, Adm'r v. Warner Holding Company, 66 S.Ct. 1086. That case held that the District Court had power to enjoin a landlord from collecting rents in excess of the legal maximum; and that as an equitable adjunct to the injunction decree the District Court had power to order a restitution of illegal rents previously collected.

The present case is distinguishable because of the conclusion reached herein that the District Court had no power to issue an injunction to compel the Distilling Company, after it had completed the sales under consideration, to file a price application which, under the statute, should have been filed before the sales took place. Since the court lacked the power to issue the mandatory injunction, there was no basis for an equitable adjunct to the injunction in the nature of the recovery of triple damages under the statute.

 The Administrator also moves this court, in case his request for rehearing should be denied, to issue its mandate affirming the decision of the District Court without prejudice to the right of the Administrator to amend the complaint so as to take account of a maximum pricing order which the Administrator intends to issue applicable to the sales in question. We think that in view of the novel character of the suit, this motion may be made under the terms of Rule 15(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that upon motion of a party, the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. If the Administrator issues a maximum price order covering the sales in question within a reasonable time after the issuance of the mandate of the court in this case, he is at liberty, notwithstanding the affirmance of the judgment of the District Court, to file a motion in the District Court under Rule 15(d) of the Federal Rules of Civil Procedure for permission to file a supplemental pleading, and if the District Court finds that the motion is tenable and deems it advisable, it may order the Distilling Company to plead thereto as provided in the Rule; and the supplemental pleading shall be subject to all defenses which the Distilling Company may desire to raise.

The petition for rehearing will be overruled and the mandate of this court will issue in due course in conformity with this opinion.

No. 5470.

The petition for rehearing in this case will be overruled and the mandate of the court affirming the judgment of the District Court will be issued, subject to the right of the appellant to file a supplemental pleading under Rule 15(d) of the Federal Rules of Civil Procedure as in case No. 5471.