**TECHNICAL TAPE CORP. v. MINNESOTA MINING & MFG. CO.**

No. 70, Docket 22462.

United States Court of Appeals Second Circuit.

Argued Nov. 13, 1952.

Decided Dec. 18, 1952.

Joseph Hirschman, New York City, Curtis, Morris & Safford, New York City, Daniel L. Morris, New York City, of counsel, for plaintiff-appellant.

Newton A. Burgess, (of Burgess, Ryan & Hicks), New York City, Harold J. Kinney, St. Paul, Minn., M. K. Hobbs, Platteville, Wis., and H. H. Hamilton, New York City, of counsel, for defendant-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action brought on November 17, 1951, under the Declaratory Judgment Act, 28 U.S.C. § 2201, to have the defendant's patent declared invalid, or, if valid,

then not infringed. The court below dismissed the complaint, holding that no justiciable controversy was stated upon which a claim for relief could be founded, and further indicated that dismissal was also required since one of the two grounds for jurisdiction, which were alleged disjunctively, was insufficient. We think that neither ground for dismissal was correct, and that the motion by the plaintiff for leave to file an amended complaint should have been granted.

The patent involved in this suit relates to pressure sensitive adhesive tapes having a non-fibrous, film backing and a surface layer of pressure sensitive adhesive. The defendant markets such tape under the brand name of "Scotch" tape.

From the affidavits submitted to the district court it appears that about two years prior to the institution of this action an application by the plaintiff, Technical Tape Corporation, for a license from the defendant, Minnesota Mining & Manufacturing Company, was denied with a warning that if Technical Tape Corporation made the tape as it contemplated it would face a highly expensive lawsuit. On October 25, 1951 the defendant's executive vice-president called at the plaintiff's office and was handed a roll of tape. The plaintiff's affidavits contend that the defendant's officer asserted it to be an infringement and that the plaintiff would be given the "toughest fight it ever saw" on such tape. There is some dispute as to whether the plaintiff had manufactured tape prior to this interview. But a pilot run in May 1951 at its laboratory had yielded a commercially satisfactory tape, and the tape exhibited at the meeting had been imported from a Canadian affiliate. It does not seem to be disputed that the manufacture of small quantities had begun prior to the commencement of this action. The plaintiff further asserted in its affidavits that its sales had met with resistance because of its prospective customers' fear of action

by the defendant, and that it had been forced to give many distributors a written promise that it would undertake the defense of any action for infringement against them. The defendant's successful prosecution of suits against other infringers of its patent was also established. The decisions, sustaining the patent, were affirmed by the United States Court of Appeals for the Seventh Circuit. Minnesota Mining & Mfg. Co. v. International Plastic Corp., 159 F.2d 554.

Following the dismissal of the complaint by Judge Clancy, the plaintiff moved for reargument and for leave to file an amendment to the complaint. Further affidavits, citing specific instances of guarantees by the plaintiff to its customers necessitated by the defendant's actions were submitted at this time. However, all of such instances occurred subsequent to the date of the filing of the original complaint. The district court denied leave to file the amendment on the ground that the plaintiff was attempting to assert a supplemental pleading, and it could not do this where the original complaint was defective, as Judge Clancy had held it to be. Bonner v. Elizabeth Arden, Inc., 2 Cir., 177 F.2d 703. In September 1952 after it had secured the dismissal of the complaint in the present action, Minnesota Mining & Manufacturing Co. brought suit in Chicago against Technical Tape and one of its distributors for infringement of the identical patent, and also commenced a suit in Kansas City against a company handling plaintiff's tape.

Even assuming that one of the disjunctive allegations [1] of jurisdiction was insufficient while the other was not, Rule 8(e)2 of the Federal Rules, 28 U.S.C.A., contemplates such alternative allegations, and provides that no dismissal is to be granted if one of them is sufficient. See 2 Moore's Federal Practice (2d edition), 1706. Keene Lumber Co. v. Leventhal, 1 Cir., 165 F.2d 815, relied on by the district court is not to the contrary, for in that

---

1. "Defendant has asserted publicly that the articles or products manufactured, used or sold by plaintiff, or the manufacture, use or sale of products of similar construction and composition, constitute infringements of the Letters Patent aforesaid." Paragraph 8 of the Complaint, p. 5(a) of the Appendix to Appellant's Brief.

case there was no jurisdiction under either of the alternative grounds that were alleged. Further, if the pleading was defective the requested amendment[2] should have been allowed in order to cure the defect. Although the affidavits submitted on the reargument in an endeavor to satisfy the requirement of a justiciable controversy referred to events subsequent to the filing of the complaint, the amendment itself did not, and hence was clearly not a supplemental pleading.

 Taking the plaintiff's allegations in the complaint and affidavits as true, as we must do, we think that there is an issue of fact as to whether an actual controversy existed at the time the complaint was filed, as required by Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617, before a declaratory judgment action may be brought.

██ Once the patentee has made some claim, directly or indirectly, so that notice is given that it asserts that there is or will be an infringement, a justiciable controversy exists, entitling the alleged infringer to seek declaratory relief. Treemond Co. v. Schering Corp., 3 Cir., 122 F.2d 702; Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 137 F.2d 68, certiorari denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454. It is not clear whether the plaintiff had sufficiently embarked on its infringing action to establish an actual controversy at the time the defendant threatened suit two years prior to the commencement of this action. If this threat was not sufficient, it was followed on October 25, 1951, by a claim of infringement and the further threat of suit. It is argued by the defendant that if the plaintiff had not begun manufacture of its tapes at the time of the interview on October 25 there could be no justiciable controversy. But at that time it had already conducted a pilot run and had imported tape manu-

factured by its Canadian affiliate. Further, manufacture did begin before suit was brought. Under these circumstances we think that there were sufficient acts and contemplated acts of infringement to create a controversy when the threats were made. Moreover, where there is such an evident intention to market a product and preparation of the means to do so, there would seem to be no sense in requiring that the manufacture and sales should precede the notice of infringement by the patentee or even the bringing of an action for a declaratory judgment. Crowell v. Baker Oil Tools, Inc., 9 Cir., 143 F.2d 1003 certiorari denied 323 U.S. 760, 65 S.Ct. 93, 89 L.Ed. 608; Borchard, Declaratory Judgments (2d edition) 807. Any other rule would involve unnecessary expense and delay. We see no merit in the defendant's argument that it did not have sufficient time to reach a considered judgment as to whether any of its rights were or would be infringed.

We cannot regard the threat as a mere "businessman's contention" as did Judge Clancy. The actions by the defendant for infringement of its patent against third parties, the latest one instituted only ten days before the present action, would indicate a purpose to assert broad claims under its patent, and to confirm the seriousness of the threats which we have referred to as made by the defendant. Whether the mere fact that the defendant had brought such other suits against strangers to the plaintiff without the existence of direct or indirect notice of infringement is sufficient to create a controversy, as plaintiff contends, we do not decide.

For the foregoing reasons, the order of the court below dismissing the complaint is reversed and the cause remanded with instructions to allow, in the interest of clarity, the amendment of the complaint which the plaintiff proposed and otherwise to pro-

---

2. —Defendant has asserted publicly that articles or products identical with those manufactured, used and sold by plaintiff, and that the manufacture, use or sale of articles or products not materially different from plaintiff's articles or products, constitute infringements of the Letters Patent aforesaid. * * *. Defend-

ant has through its officers charged that plaintiff's pressure-sensitive adhesive cellophane tape is an infringement of the Letters Patent aforesaid, and has threatened plaintiff with suit for infringement if it sold such tape." Page 108a of Appendix to Appellant's Brief.

ceed in accordance with the views expressed in this opinion.

CLARK, Circuit Judge (concurring).

I agree with the decision, but think it should rest also on the showing that an undoubted controversy developed after this action was brought. Whatever doubt as to the existence of a controversy there may have been originally has been entirely removed—if we can look at actualities. And F.R.C.P., rule 15(d), carrying over into general practice the equity device of supplemental pleadings, is designed to give us just that power. The only suggested bar is a judicial gloss on the broad terms of the rule to the effect that only a "good" complaint may be supplemented. But to such a suggestion we gave the proper answer in the early days of the rules: "Defendants' claim that one cannot amend a non-existent action is purely formal, in the light of the wide and flexible content given to the concept of action under the new rules." Hackner v. Guaranty Trust Co. of New York, 2 Cir., 117 F.2d 95, 98, certiorari denied 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520. That was the case of an amendment to substitute a new plaintiff showing requisite grounds of federal jurisdiction in place of an original one who did not; but the principle is applicable here, indeed, a fortiori, since the issue and the parties remain unchanged. No reason appears why the formality and expense of starting a new action should be compelled in order to bring the parties before the court in essentially the same posture except for a delay of a couple of years or more.

Of course if there is a real reason in the particular case why later matter should not be considered, that reason should be adduced and decision rest upon it, not on some formal generalization read into the rules contrary to their spirit. Moreover, usually such reason will be better developed, and with greater fairness to both sides, if the pleading change is actually allowed and the controversy permitted to go forward to a hearing on the merits, rather than be disposed of summarily upon a mere request for permission to amend or supplement; but however developed, the issue on the merits should be the only controlling one. Here, since there is so obviously a real dispute over patent validity which must be tried some time, one senses that the underlying struggle is to secure a priority which might give some advantage in determining the district where the battle is to be fought. But under the existing power of the federal court to transfer cases for the convenience of trial and the witnesses, cf. our recent decisions in Helene Curtis Industries v. Sales Affiliates, 2 Cir., 199 F.2d 732, and Ronson Art Metal Works, Inc., v. Brown & Bigelow, Inc., 2 Cir., 199 F.2d 760, the priority of one suit over another in point of time is only one of several factors to be considered. Here the dates would remain inviolate for whatever they might show, whether plaintiff is now allowed to complete his case or not; the facts will always be that he did start an action on a certain date and that this became more fully perfected later. Forcing plaintiff to start over will not add to or subtract from these facts; it will only cause judicial waste.

In addition to the Hackner case in our own court, there may be cited Porter v. Block, 156 F.2d 264, 271, where the Fourth Circuit appears to have reached a like conclusion without discussion or question. This view is supported in 3 Moore's Federal Practice 858, 859, 2d Ed. 1948, and see 1951 Cum.Supp. 20. See also Commentary, Stating New Claim in Supplemental Pleading, 2 Fed.Rules Serv. 656. Opposed are certain district court cases, relying on precedents before the rules; and there is also a contrary statement by this court as one of two grounds of decision in Bonner v. Elizabeth Arden, Inc., 2 Cir., 177 F.2d 703, 705. Some grounds of distinction between this case and the present one seem available; moreover, the earlier decision did not discuss the considerations here advanced. In view of this and of the further fact that allowance of a supplemental pleading is a matter of the court's wise discretion in the particular case, I do not think we are estopped on this record from consideration of the additional material brought to the attention of the district court and included in the record before us.