**SMITH–CORONA MARCHANT INC.,**
**Plaintiff,**

v.

**AMERICAN PHOTOCOPY EQUIPMENT COMPANY, Defendant.**

United States District Court
S. D. New York.
Dec. 28, 1962.

Sullivan & Cromwell, New York City, for plaintiff; Marvin Schwartz, New York City, of counsel.

Curtis, Morris & Safford, New York City, for defendant; William C. Conner, New York City, of counsel.

McLEAN, District Judge.

Count I of the complaint in this action seeks a declaratory judgment decreeing that the "Eisbein patent for developing apparatus" owned by defendant is invalid, and that the diffusion transfer photocopy machines made and sold by plaintiff do not infringe it. Defendant has moved to dismiss Count I on the grounds (a) that the court lacks jurisdiction over the subject matter, and (b) that the complaint fails to state a claim upon which relief can be granted. Defendant has moved under Rule 12(b) on the face of the complaint and has also moved for summary judgment under Rule 56, supporting the motion by affidavits.

The issue is whether the case presents a justiciable controversy within the meaning of 28 U.S.C. § 2201, which empowers the court to declare the rights and other legal relations of the parties "in a case of actual controversy within its jurisdiction." The "controversy" contemplated by this section has been defined as "one that is appropriate for judicial determination" as distinguished from a "dispute of a hypothetical or abstract character." Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)

"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

■ The distinction between a case "appropriate for judicial determination" on the one hand, and a "dispute of a hy-pothetical or abstract character" on the other, is necessarily one of degree. Dewey & Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68, 70 (3rd Cir., 1943).

■ The courts have frequently been called upon to apply these general principles to actions like this one seeking a declaration of non-validity and non-infringement of a patent. It is clear that if defendant has threatened plaintiff with an infringement suit, a justiciable controversy is presented. Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876 (2d Cir., 1952).

It is equally clear that a justiciable controversy is presented, even where there has been no actual threat of suit, if defendant has notified plaintiff or plaintiff's customers that defendant claims that plaintiff has infringed. Simmonds Aerocessories v. Elastic Stop Nut Corp., 257 F.2d 485 (3rd Cir., 1958); Rhodes Pharmacal Co. v. Dolcin Corporation, 91 F.Supp. 87 (S.D.N.Y.1950); General Electric Co. v. Refrigeration Patents Corp., 65 F.Supp. 75 (W.D.N.Y.1946).

And the notice need not be in any particular form, as long as it clearly manifests defendant's intent to assert his patent rights as covering plaintiff's product. Treemond Co. v. Schering Corporation, 122 F.2d 702 (3rd Cir., 1941).

■ Moreover, there may be a justiciable controversy, even in the absence of such a notice by defendant, if other factors are present which demonstrate that a concrete dispute exists of sufficient immediacy and reality to warrant a judicial declaration. Joseph Bancroft & Sons Co. v. Spunize Co. of America, 268 F.2d 522 (2d Cir., 1959); Dewey & Almy Chemical Co. v. American Anode, Inc., supra; Rhodes Pharmacal Co. v. Dolcin Corporation, supra.

The sufficiency of the present complaint is to be judged in the light of these principles. Its allegations, as far as relevant to this issue, may be summarized as follows.

The Eisbein patent for developing apparatus, issued on November 3, 1953, was

originally owned by Copease Manufacturing Co., Inc. ("Copease"). In September 1959 and again in January 1960, Copease informed plaintiff that Copease would commence an infringement action against plaintiff if plaintiff manufactured or sold a diffusion transfer photocopy machine of the type which plaintiff now manufactures and sells. Plaintiff began that manufacture and sale in August 1960.

On June 25, 1962 Copease assigned the Eisbein patent to defendant. Defendant acquired all the capital stock of Copease and Copease thereupon was dissolved. Prior to June 25, 1962, Copease had commenced actions against various persons charging infringement of the Eisbein patent. These persons manufactured and sold diffusion transfer photocopy machines "similar" to those now manufactured and sold by plaintiff. After June 25, 1962, defendant caused itself to be substituted or added as a party plaintiff in these actions and is continuing to prosecute them.

On July 27, 1962, defendant informed plaintiff that defendant now owned the Eisbein patent and that defendant had adopted a policy of granting licenses under it, but that such policy was subject to change without notice. On August 3, 1962, plaintiff informed defendant that plaintiff had no reason to believe that any of its activities exposed it to liability to defendant for royalties. On August 14, 1962 defendant informed plaintiff that its policy was to grant licenses under the Eisbein patent at a 6% royalty based on retail selling price, "provided that the prospective licensee paid all back royalties, if any, due and owing." On August 29, 1962 defendant informed plaintiff that defendant's policy was "not to grant a license to any third party who did not first pay any and all royalties due and owing for the past," that defendant could not concede any weakness in the Eisbein patent, that defendant's policy concerning full payment of past royalties was not subject to modification, and that defendant's offer to grant licenses was subject to change without prior notice.

The affidavits submitted by plaintiff in opposition to the motion for summary judgment, taken at their face value, contain considerably more evidence tending to show the existence of a justiciable controversy than is set forth in the complaint. This is particularly true of the affidavit of plaintiff's patent administrator concerning a conversation which he claims to have had on September 26, 1962 with defendant's secretary and general counsel. Apparently it was agreed between these gentlemen that this conversation would be "off the record" and that it would not be used by plaintiff as a basis for an action for a declaratory judgment. The affidavits and counter-affidavits of the parties, however, have thoroughly revealed the conversation, and each party charges the other with having been the first to break faith. The question has been raised as to whether the court should consider the affidavits on this subject under these circumstances. The court cannot be bound by any understanding between the parties which amounts to an agreement to withhold relevant information from the court. The court is concerned only with ascertaining the merits of this motion, and to that end it will consider all the affidavits submitted to it.

According to plaintiff's affidavit, defendant's secretary and general counsel stated in this conversation that it was defendant's position that the Eisbein patent covered all of the plaintiff's photocopy machines, and that if plaintiff did not indicate within a few weeks that it would sign a license agreement, defendant would have no alternative but to begin suit. The affidavit of defendant's secretary and general counsel, although apparently conceding that there was an agreement that the conversation would not be divulged, denies that he made the statements attributed to him.

Plaintiff's affidavits contain further evidence expanding upon and adding to the allegations of the complaint, evidence which, if true, establishes the existence of a justiciable controversy. Certain of the incidents related in the affi-

davits occurred subsequent to the institution of this action on October 4, 1962. I have disregarded these on the theory that only those events occurring prior to the beginning of the action should be considered. Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876 (2d Cir., 1952).

■ Although I have carefully considered all this evidence, it is unnecessary to recite it in detail, since the evidence provided by plaintiff's affidavit as to the direct threat allegedly made by defendant on September 26, 1962, if true, is clearly sufficient to establish the existence of a controversy. Defendant's denial of this conversation, as well as its denial of various other allegations in plaintiff's affidavits, merely raises an issue of fact. The presence of such an issue requires the denial of the motion for summary judgment. Technical Tape Corp. v. Minnesota Mining & Mfg. Co., supra; Frederick Hart & Co. v. Recordgraph Corp., 169 F.2d 580 (3rd Cir., 1948).

■ As far as defendant's motion under Rule 12(b) addressed to the face of the complaint is concerned, it is true, as previously pointed out, that the allegations of the complaint are not as strong, from plaintiff's point of view, as those of the affidavits. I have concluded, however, that they are sufficient to allege a justiciable controversy. The complaint alleges flatly that defendant's predecessor in title, Copease, threatened plaintiff with an infringement action if plaintiff made the diffusion transfer photocopy machines. The fact that plaintiff had not yet started production of these machines does not make this allegation irrelevant. Technical Tape Corp. v. Minnesota Mining & Mfg. Co., supra; General Electric Co. v. Refrigeration Patents Corp., supra.

The fact that the threat was made, not by defendant, but by its predecessor, raises a more difficult question, but there is authority to the effect that threats by a predecessor may be considered. Gordon Johnson Co. v. Hunt, 102 F.Supp. 1008 (N.D.Ohio E.D.1952).

■■ The complaint also alleges that defendant is now suing manufacturers of other similar machines for infringement. Although defendant criticizes the word "similar," I believe that, viewing the pleading in the light most favorable to the plaintiff, as the court must on such a motion (Frederick Hart & Co. v. Recordgraph Corp., supra), the allegation is sufficient to support a claim that the defendants in these other actions are in the same position as the plaintiff in this one. It has been held that the existence of actions by a patentee against other manufacturers or users of the product which plaintiff manufactures or uses is an important factor to be considered in determining whether there is a justiciable controversy between plaintiff and the patentee. Dewey & Almy Chemical Co. v. American Anode, Inc., supra; Apex Hosiery Co. v. Knitting Machines Corp., 90 F.Supp. 763 (Del.1950).

See in this connection Technical Tape Corp. v. Minnesota Mining & Mfg. Co., supra, in which the Court of Appeals in the Second Circuit, although expressly refraining from deciding whether the mere fact that defendant had brought other suits against strangers to the plaintiff was in itself sufficient to create a controversy, nevertheless stated that these other suits "would indicate a purpose to assert broad claims under its patent." (200 F.2d 876 at 878).

Finally, significance must be given to the allegations of the complaint to the effect that defendant, in offering a license under its patent to plaintiff, insisted upon its policy of full payment of past royalties. There would seem to be no basis for asking for royalties on sales made by plaintiff prior to the execution of a license agreement unless it were defendant's claim that plaintiff had infringed the patent by these prior sales. It is true that defendant's correspondence on this subject, in the language of the court in Treemond Co. v. Schering Corporation, supra, was "craftily phrased." I am satisfied nevertheless that this correspondence, viewed in the light of the other facts alleged in the complaint, was intended by defendant and understood by plaintiff to be an implied threat that in-

fringement would be asserted by defendant if plaintiff declined to take a license. Accordingly, the motion to dismiss the complaint under Rule 12(b) is also denied.

This leaves for consideration a request by defendant, somewhat belatedly made in its supplemental memorandum, that this court direct a separate trial on the issue of the existence of a justiciable controversy. Such a trial was ordered in Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 117 F.Supp. 355 (S.D.N.Y.1953), on the theory that time and expense would be saved by determining this issue in advance of a full trial on the merits. I have concluded that no such separate trial is necessary in this case, because the undisputed facts are in themselves sufficient to demonstrate that we are not dealing here with any abstract or hypothetical question, but that, on the contrary, a real and present dispute exists which is ripe for judicial determination. These undisputed facts consist, among others, of the fact that defendant has sued other manufacturers, and that an officer of defendant's predecessor concededly informed plaintiff that "I finally told him that I thought we might be in mortal conflict and never could get together because he said he had a machine that he was going to make without a license," and that "so far no photocopying machine that we had seen on the market was able to develop without violating the Eisbein patent." (Exhibit C to affidavit of Charles E. Hallenborg, submitted by defendant).

Finally, we have the correspondence between defendant and plaintiff relating to defendant's offer of a license. The actual correspondence, the authenticity of which is conceded, seems somewhat stronger than the complaint's allegations concerning it, in that it appears that defendant's final refusal on August 29, 1962 to modify its insistence upon back royalties was expressed after the receipt of a letter from plaintiff dated August 22, 1962, not referred to in the complaint, in which plaintiff stated that plaintiff felt that in its case "the ques-

tion of past royalties does not arise." When plaintiff claims that it does not owe past royalties and defendant nevertheless insists that plaintiff agree to pay them as a condition of obtaining a license under the patent, it is clear to my mind that plaintiff is denying that its product infringes the patent and that defendant is claiming that it does. Defendant's request for a separate trial on the issue of the existence of a justiciable controversy is denied.

Motion denied. So ordered.