**LEESONA CORPORATION**
v.
**CONCORDIA MFG. CO., Inc., et al.**

Civ. A. Nos. 4207–4211, 4213, 4217–4219, 4222.

United States District Court,
D. Rhode Island.
April 21, 1970.

**394**

Edward F. Hindle, John V. Kean, and James P. Kelly, of Edwards & Angell, Providence, R. I., for plaintiff.

Edwin H. Hastings, and DeWitte T. Kersh, Jr., Providence, R. I., for defendants, Kayser-Roth, Inc., and others.

Edward J. Regan, Providence, R. I., for defendant, J. P. Stevens & Co., Inc.

Herbert B. Barlow, Jr., Providence, R. I., for defendants, Beck Kleinman Corp. and others.

Coleman B. Zimmerman, Providence, R. I., for defendant, Hanover Mills, Inc.

Harry W. Asquith, Providence, R. I., for defendant, Concordia Mfg. Co., Inc.

Lewis Z. Lavine, Woonsocket, R. I., for defendant Woonsocket Textiles, Inc.

Mortyn K. Zietz, Providence, R. I., for defendant, International Yarn Corp.

## OPINION

PETTINE, District Judge.

This is a suit for declaratory and other equitable relief commenced originally on October 9, 1969 in Rhode Island Superior Court and thereafter removed to this court.

The plaintiff is a Massachusetts corporation qualified to do business in and having its principal place of business in Rhode Island. The defendants are some 60 corporate defendants with their corporate domiciliaries and principal places of business in states along the eastern seaboard, particularly in the Carolinas and New York.

Centrally at issue in the case is the business relationship which has existed between the parties by virtue of the plaintiff's licensing, in exchange for royalties, of the defendants, to use certain apparatus and processes exclusively owned by and under patent to the plaintiff.

Several of the defendants have moved to dismiss this action on varying grounds, in particular including (1) insufficient service of process, (2) lack of subject matter jurisdiction, (3) lack of a justiciable controversy, (4) inappropriateness of case for exercise of declaratory judgment discretionary power, and (5) lack of in personam jurisdiction.

## SUBJECT–MATTER JURISDICTION AND JUSTICIABLE CONTROVERSY AND PROCESS

The court will treat first the facts and the law as to subject-matter jurisdiction, justiciable controversy, and service of process.

Prior to summer 1969 Leesona Corporation received on a regular basis royalty payments from its licensees. Each licensee made such payments pursuant to separate agreements and schedules entered into by and between it and Leesona. The licensing agreements were grounded upon U.S. Letters Patent Nos. 2,803,105 (hereinafter the '105 patent) 2,803,108 (hereinafter the '108 patent)

and 2,803,109 (hereinafter the '109 patent), patents held by Leesona.

Sometime in the summer of 1969 a dispute arose between Kayser-Roth Corp., one of the licensees, and Leesona. Kayser-Roth failed to make a required quarterly royalty payment due in July, and following a 30-day grace period, went into default on July 30, 1969. On August 19 and on August 27, 1969 Leesona made demand for the royalties to which Kayser-Roth responded on August 29, 1969, by serving notice on Leesona that the licensing agreements were terminated and rescinded. On August 30, 1969 Kayser-Roth commenced suit against Leesona in the United States District Court for the Eastern District of New York seeking a declaratory judgment of the invalidity and unenforceability of the '105, '108, and '109 patents, a declaration of its rights with respect to the licensing agreements, and affirmative relief under federal antitrust laws.

It is stated in the affidavits that an official of Leesona was informed by many of the major licensees that a refusal by Kayser-Roth to pay royalties would inevitably provoke similar refusals by all the licensees for competitive reasons. It is further stated that this observation was made prior to October 9, 1969, a significant date, as will soon be perceived. Finally, it is stated that in the past history of the relationship between Leesona and its licensees when one licensee refused to make payments because of a dispute, all other licensees followed suit. (See Affidavit of Robert Pennock, Master File C.A. No. 4207, Sub #5, 2nd from the bottom).

Moreover it is stated that in conversations of September 18, 1969 and October 3, 1969 one Dalton McMichael, president of one licensee, told Robert Leeson, chairman of Leesona, that Kayser-Roth's suit would cause other licensees to refuse payments.

The affidavit of Dalton McMichael effectively neutralizes the contentions of the Leeson affidavit for it shows that Mr. McMichael did not know of any licensee who would refrain from payment, that he only speculated, at best, as to possible future courses of conduct, that he was unauthorized in any event to speak for any licensee other than his own corporation, and that his own corporation was presently preparing its quarterly payment and did not cease such preparation until after the receipt of notice of suit on October 13, 1969.

On October 8, 1969, Leesona notified its licensees that it would immediately commence suit to determine the rights of the parties. On October 9, 1969 Leesona filed suit in Rhode Island Superior Court against 64 corporate licensees, seeking declaratory and other equitable relief including construction of the licensing agreements and a declaration of the validity of the '105, '108, and '109 patents. Notice was given to domestic corporations pursuant to R.I.R.C.P. 4(d) (3) and to foreign corporations not within the latter method by mailing a copy of the summons and complaint together with a copy of the order of notice by registered mail, return receipt requested, postage prepaid, to each defendant at its address as stated in the licensing agreements.

On October 14, 1969, Leesona commenced a separate suit against Kayser-Roth alleging breach of the licensing agreement and demanding judgment together with interests and costs. On October 17, 1969, Kayser-Roth removed that suit to this court and moved in the Eastern District of New York for either an injunction against the suit here or for a transfer of the suit to the Eastern District. But Leesona then voluntarily dismissed its suit in this court. The New York court thereupon denied Kayser-Roth's motion. On the same day, by stipulation, the original Rhode Island Superior Court suit by Leesona against Kayser-Roth was discontinued without prejudice, and Kayser-Roth was added as a party defendant to the October 9, 1969 suit by *ex parte* application. Prior to October 9, 1969 no defendant, other than Kayser-Roth, had withheld pay-

ments, commenced suit, or even threatened suit against Leesona.

On October 25, 1969 an *ex parte* temporary restraining order was issued by the Superior Court of Rhode Island enjoining all defendants from instituting or prosecuting any suit or proceeding with respect to the subject matter of the pending suit. The duration of that order was ten days. On October 31, 1969 Kayser-Roth Corp. was exempted from the coverage of the Superior Court temporary restraining order. Immediately prior to the expiration of the Superior Court order all defendants removed to this court, whereupon Leesona on November 3, 1969 petitioned this court for restraining relief similar to that it had obtained in the Superior Court. Removal was completed, and the removal order required Leesona to replead its complaint in conformity with the federal rules. This court initially denied restraining relief to Leesona but upon rehearing granted a modified temporary restraining order.

In the interim between the commencement of the Superior Court suit and its removal to this court, several defendants commenced suit against Leesona in other federal courts and since the time of removal several others have done the same. Likewise, several defendants have ceased payments under the licensing agreements. The litigation in the Eastern District of New York commenced subsequent to the filing of the Superior Court suit raises all issues common to this suit as well as additional patent validity and misuse as well as antitrust matters.

The parties here have prepared extensive memoranda, affidavits, and interrogatories to determine the jurisdictional issues. Three interim pre-trial orders have been entered and the temporary restraining order has remained in effect.

*Service of Process*:

■ The court is convinced that service has been accomplished in accordance with § 9–5–33 of the R.I.G.L. and with Rule 4(d) (3) of the R.I.R.C.P., both of which comport with the federal rules, see Fed.R.Civ.P. 4(d) (3), (7), 4(e), the case law, see Samson Cordage Works v. Wellington Puritan Mills, Inc., 303 F. Supp. 155 (D.R.I.1969), Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and the prevailing practice. Cf. Albert Levine Associates, Inc. v. Hudson, 43 F.R.D. 392 (S.D.N.Y.1967).

*Subject Matter Jurisdiction*:

■ Patent matters which concern validity or infringement may be tried exclusively in the federal courts. 28 U.S.C. § 1338. In the absence of diversity of citizenship, patent matters primarily concerned with either consensual relations or tortious wrong doing may be tried exclusively in the state courts. See Vanderveer v. Erie Malleable Iron Co., 238 F.2d 510, 513 and nn. 8–10 (3rd Cir., 1956). Moreover, where such a state court suit is brought, the validity of a patent or its infringement may properly be considered by the state court. Pratt v. Paris Gas Light & Coke Co., 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458 (1896); Becher v. Contoure Labs., 279 U.S. 388, 391–392, 49 S.Ct. 356, 73 L.Ed. 752 (1929); MacGregor v. Westinghouse Electric & Mfg. Co., 329 U.S. 402, 67 S.Ct. 421, 91 L.Ed. 380 (1947); Lear Siegler, Inc. v. Adkins, 330 F.2d 595 (9th Cir., 1964). However, if the suit commenced in state court is primarily one to determine the validity or infringement of a patent, then upon removal of that suit to a federal court, dismissal is mandated. See American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). This is because removal jurisdiction is derivative in nature, and, as the original state court lacked jurisdiction, so too does the federal court. See Lambert Run Coal Co. v. Baltimore & Ohio R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922); General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922); Freeman v. Bee Machine Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.

Ed. 1509 (1943). Of course, this yields the paradoxical result, criticized by the commentators, see Wright, The Law of Federal Courts at p. 132 (2nd Ed. 1970), 1A Moore's Federal Practice paragraph 0.157(3) at pp. 84–87 (1965), and proposed to be corrected by the American Law Institute, see Study of the Division of Jurisdiction between State and Federal Courts, Official Draft §§ 1312(d), 1317(b), 1382(e) (1969), that the federal court must dismiss, even though, had the action been filed anew rather than removed, jurisdiction would have been sound. Notwithstanding the paradox, the inquiry for this court must be whether the suit filed in Rhode Island Superior Court was within or without the exclusive patent jurisdiction of the federal courts, 28 U.S.C. § 1338.

■ Plaintiff argues that its suit is primarily one designed to construe its licensing agreements with defendants. The court does not agree. The relief affirmatively sought by plaintiff and pleaded by it in its own complaint includes a declaration of the validity of the patents. How can Leesona rely upon the Kayser-Roth suit in New York for its argument of justiciability without implicitly recognizing that this suit is a mirror response to that suit's claim of invalidity? This is not a suit such as the one in Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), where patent invalidity is raised as a defense to a suit on the contract. See also Lear Siegler, Inc. v. Adkins, 330 F.2d 595 (9th Cir., 1964). Here plaintiff has actively sought a patents determination rather than simple damages for breach and in addition to declaratory relief as to the meaning of the agreements. Cf. Wilborn & Sons v. Brandex Tilt Sash, Inc., 380 F.2d 44 (7th Cir., 1967). Nor is this case controlled by Koratron Co., Inc. v. Deering Milliken, Inc., 418 F.2d 1314 (9th Cir., 1969) for there the patent holder did not plead but instead waived its federal contributory infringement action and went forward with a state claim for interference with prospective economic advan-

tage. See also Luckett v. Delpark, Inc., 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926). Because this suit seeks primarily a determination of patent validity, the jurisdiction of this court is not sound, and the motions to dismiss must be granted.

*Justiciable Case or Controversy:*

■ The justiciability of a patents controversy is an often litigated question dependent in most instances on the facts of each case. Because the choice of forum often depends in patent cases on the suit filed first in time the impetus is strong, where a difference appears, to commence litigation first and ask questions later. However, this impetus meets restraint in the requirements of justiciability. Generally, it is required that there be either a charge of infringement, a published statement to the industry of infringement, a breach of the agreement of the parties, a refusal to meet a payment, or at least a threat of suit. See Treemond Co. v. Schering Corp., 122 F.2d 702 (3rd Cir., 1941); Dewey & Almy Chem. Co. v. American Anode, Inc., 137 F.2d 68 (3rd Cir., 1943) cert. den. 320 U.S. 761, 64 S. Ct. 70, 88 L.Ed. 454 (1943). See generally 6A Moore's Federal Practice paragraph 57.20 (1966). Not only do such rules serve the usual purpose of presenting the court with a genuine adversarial confrontation but also they seek to avoid the use of a suit to provoke the controversy to be adjudicated.

■ In the instant case the defendants urge this court to focus on the issue of justiciability as of the time of the filing of the suit in the state courts. There is ample authority for such a result. See, e. g., American Needle & Novelty Co. v. Schuessler Knitting Mills, 379 F.2d 376 (7th Cir., 1967); Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876 (2nd Cir., 1952); Smith-Corona-Marchant, Inc. v. American Photocopy Equipment Co., 214 F. Supp. 348, 352 (S.D.N.Y.1962). More importantly there is ample reason: to permit the justiciability of a suit to

crystallize after filing is to invite the use of filing to provoke the very controversy which should exist before or at the time of filing. But see Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876, 879 (Concurring opinion, Clark, J.) (2nd Cir., 1952).

It could fairly be argued that to focus exclusively on the time of the filing in this case is to give defendants an undue advantage in the race to the courthouse, in that the decision to refuse a royalty is solely within their control and they could, hence, refuse a payment, send notice of termination, and commence suit all within a very brief time immediately prior to any payment due date. Yet, there are means, which need not now be discussed, for the avoidance of such a result. Moreover, if the Kayser-Roth case be used as an example, as soon as refusal to pay is threatened, then suit would be possible, especially where default occurs. Finally, there is no certainty that first to be filed suits must always prevail over more conveniently located ones where the parties and issues are the same.

The cases cited and relied upon by plaintiff, including Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) are not apposite for they concern mootness, that is, justiciability once had but lost because of post-filing events. See Rosa v. Herrero, 423 F.2d 591, (1st Cir., 1970). Indeed, the restraining principles which underlie a decision to dismiss a case because of mootness support a rule which measures justiciability at the time of filing.

For these reasons, the court must examine the facts as they stood on October 9, 1969 when Leesona commenced this suit in Rhode Island Superior Court. Plaintiff relies upon the following facts: (1) the commencement of litigation by Kayser-Roth; (2) the competitive nature of the licensees' relationship to each other which makes probable that when one licensee stops payment, all will do so; (3) the past history in the industry which shows that all licensees have indeed ceased payment when one has done so; (4) the statements alleged to have been made to one of plaintiff's vice-presidents that if Kayser-Roth ever ceased to make payments, so would other licensees; and (5) the alleged statements of the President of one licensee to the Chairman of the Board of the plaintiff that royalty withholding and commencement of suit were distinct possibilities. Defendant attacks each and every one of these factors.

█ As the court's previous statement of facts makes clear the McMichael conversation has effectively been neutralized as any indication of a threat to commence suit or withhold payment. As further appears on the record, as of October 9, 1969 no defendant, other than Kayser-Roth, had withheld payment, threatened to withhold payment, commenced suit, threatened to commence suit, or otherwise manifested dispute with Leesona.

The Kayser-Roth suit alone without more is no guarantee whatsoever that other licensees would have withheld payment or commenced suit.

█ The crucial issue then resolves itself into the legal significance of plaintiff's affidavit by Robert Pennock wherein it is claimed that past licensee history, industry competitive structure, and statements of licensees all made it a "foregone conclusion" that payments would be withheld or suit commenced. In the absence of more explicit indications of payment withdrawal or commencement of suit, and in the absence of weighty showings of past history, this court is not inclined on the basis of industry structure alone to find sufficient danger to commence suit. If this kind of an affidavit can supply a basis for suit, in my view, the justiciability requirement could easily be diluted. The court appreciates the importance of business realism in an important commercial suit such as this, but it cannot pin its holding of justiciability to a speculative surmise as to the probability of either withdrawal of payments or commencement of suit.

## DECLARATORY JUDGMENT DISCRETION

Several defendants have argued in their briefs that the discretionary power of the court to dismiss, even where jurisdiction is sound and the case is justiciable, should be exercised in this case. However, plaintiff has treated this issue as more appropriate to the transfer phase of the case and has not fully briefed it for that reason. The court notes also that none of the motions to dismiss raise this issue explicitly as a ground for dismissal. Accordingly the court declines at this time to pass on this question.

## JURISDICTION OVER THE PERSONS OF THE DEFENDANTS

Thirty-five defendants have moved to dismiss for lack of in-personam jurisdiction. Common to all defendants' Rhode Island relationships are the following factors: (1) contracts between plaintiff and each defendant by which each defendant is licensed to use processes and apparatus under the '105, '108, and '109 patents, in exchange for which each defendant makes substantial cash payments to plaintiff; (2) final execution of the contracts in Rhode Island; (3) various relations supportive of the central exchange of use to licensee for royalties to licensor, including in particular plaintiff's machinery sales and leasing, plaintiff's development and design program, plaintiff's service and parts sales, plaintiff's instructional program, and plaintiff's account audit methods.

On the basis of these core factors plaintiff argues that Rhode Island must be able to reach each defendant for purposes of suit here. The court agrees.

There has been much litigation in this jurisdiction concerning the scope of in-personam jurisdiction. The only constant is that in each case Rhode Island's statute, § 9–5–33 R.I.G.L., 1956, extends to the full limits of constitutional permissibility. Conn v. ITT Aetna Finance Co., R.I., 252 A.2d 184 (R.I.Sup.

Ct.1969); Del Sesto v. Trans World Airlines, Inc., 201 F.Supp. 879 (D.R.I. 1962).

While the court does not find the contacts in this case as compelling as they were in those cases concerning the doing of business here for purposes of profits derived directly from Rhode Island and from which business the particular cause of action arose, e. g., Westphal v. Stone Mfg., 305 F.Supp. 1187 (D.R.I. 1969), Rosen v. Savant Instruments, Inc., 264 F.Supp. 232 (E.D.N.Y.1967), nor as compelling as the contacts which induced a Rhode Island citizen to Florida where he was present only for a limited period and was injured, e. g., Forsythe v. Cohen, 305 F.Supp. 1194 (D.R. I.1969), it does not on the other hand, deem this a case of a "naked buyer-seller relationship," e. g., Riverhouse Publishing Co. v. Porter, 287 F.Supp. 1 (D.R.I. 1968), nor one of an alleged wrong unrelated to this forum in any way and accomplished by a foreign corporation whose local subsidiaries were less than completely tied to it. Conn. v. ITT Aetna Finance Co., R.I., 252 A.2d 184 (Sup.Ct. R.I.1969). This case is somewhat akin to those cases involving systematic and continuous business contact with this state, e. g., Del Sesto v. Trans World Airlines, Inc., 201 F.Supp. 879 (D.R.I. 1962), Samson Cordage Works v. Wellington Puritan Mills, Inc., 303 F.Supp. 155 (D.R.I.1969), although admittedly it does involve not seller activity here but rather the activity of out-of-state purchasers of Rhode Island properties and services.

In this last respect there is some validity to defendants' arguments that Rhode Island's interest in suit is diminished by its countervailing interest in remaining attractive to major purchasers of one of its basic industry's goods and services by protecting them from the risks and costs of being sued in Rhode Island. Nevertheless, it can readily be seen that Rhode Island contacts of a direct sort are involved in this suit. The fact is that all the benefit does not flow directly into Rhode Island and none

out of Rhode Island. This is a hard-headed business relationship in which defendants do systematic and continuing business with plaintiff to get the benefit of plaintiff's patented processes and apparatus for their own business usages. Additionally, as part of the many functions supportive of the central exchange, defendants to a greater or lesser extent, not necessary here to be detailed, are in contact with plaintiff here in Rhode Island. Given these contacts it is not altogether realistic for defendants to argue that they could not foresee any possibility of suit in Rhode Island. And given such foresight defendants, as easily as plaintiff at least, could contractually have limited the venue of any suit. In sum, defendants' balancing of interests argument fails to mitigate its continuing, direct relationship with the Rhode Island plaintiff and forum.

Still further, while this court has deemed this suit to be one primarily concerned with the validity of the '105, '108 and '109 patents, it does not follow that it must disregard the importance of the cessation of royalty payments for purposes of the question of in-personam jurisdiction. The invalidity or validity of the patents cause the cessation or continuation, respectively, of these payments to this basic Rhode Island industry. To suggest that Rhode Island has no concern over so important an economic factor is to invite this court to turn its face away from a most important contact. Indeed, this contact must be regarded as central, for in this court's view it is the contact around which this controversy swirls.

In sum, because all defendants pour vast resources into this Rhode Island enterprise from which they derive important processes and apparatus for their own enterprises, because all defendants maintain certain additional relations supportive to the central relationship, and because the central issue in this litigation leads inevitably to the continuation or cessation of vast payments to this important Rhode Island enterprise,

this court concludes that the defendants are within the jurisdiction of Rhode Island and in this respect denies their motions to dismiss.