**GEORGIA–PACIFIC CORPORATION,**
**Plaintiff,**

**v.**

**WHDH CORPORATION, Defendant.**

**Civ. No. 2016 N.D.**

United States District Court,
D. Maine, N. D.

May 1, 1974.

Donald W. Perkins, Daniel E. Boxer, Jotham D. Pierce, Jr., Portland, Me., for plaintiff.

Theodore H. Kurtz, South Paris, Me., J. Owen Todd, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

GIGNOUX, District Judge.

In this diversity action, removed to this Court from the Washington County, Maine, Superior Court, Georgia-Pacific Corporation (Georgia-Pacific) has sued WHDH Corporation (WHDH) for alleged breach of a contract to purchase 15,000 tons of newsprint per year from Georgia-Pacific's now dissolved subsidiary, St. Croix Paper Company (St. Croix) of Woodland, Maine, during the three-year period, January 1, 1971 to December 31, 1973.[1]

Presently before the Court is defendant's motion to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over its person. The record consists of the answers to interrogatories and affidavits submitted by plaintiff in opposition to the motion, together with the written and oral arguments of counsel. For the reasons to be stated, the motion is denied.

The facts, although somewhat selectively presented by each party, are essentially uncontroverted. Georgia-Pacific is a Georgia corporation which owns and operates a paper mill at Woodland, Maine. WHDH is a Massachusetts corporation which publishes a newspaper at Boston, Massachusetts. WHDH has never qualified to do business in Maine, maintains no office in Maine, and has no agents or employees in Maine. Negotiation of the contract which is the subject matter of this suit, execution of the contract, payments made under the contract, and requests for shipments of newsprint under the contract all took place outside of the State of Maine.

From at least 1956, WHDH and St. Croix have maintained a continuous course of dealing, in which St. Croix has sold substantial amounts of newsprint from its Woodland mill to WHDH pursuant to similar standard newsprint contracts. Each such contract, including the contract to which this action relates (i) provided for delivery of the newsprint to WHDH F.O.B. St. Croix's mill at Woodland; (ii) provided that title to the newsprint passed to WHDH upon delivery F.O.B. St. Croix's mill at Woodland; (iii) provided that the returnable "cores" upon which the newsprint was rolled were to be returned from Boston to Woodland, freight prepaid by WHDH; (iv) recited that it was executed at Woodland; and (v) recited that it was to be governed by the laws of the seller's legal domicile, the seller's address being Woodland, Maine. The record further discloses that all newsprint manufactured and sold pursuant to the contracts was to be and was produced at St. Croix's Woodland mill, in accordance with specifications supplied by WHDH.

Pursuant to the current contract, WHDH requested and received monthly newsprint shipments from St. Croix's Woodland mill, in amounts varying from 12 to 27 carloads, during the year 1971, and for six months during the year 1972 until WHDH refused to accept any further shipments. Each carload was shipped F.O.B. Woodland, and title passed to WHDH at Woodland. In accordance

---

1. The contract upon which Georgia-Pacific sues was entered between St. Croix, identified on the face of the contract as a subsidiary of Georgia-Pacific, and Boston Herald Traveler Corporation. Subsequent to the date of the contract, St. Croix was merged into Georgia-Pacific and Boston Herald Traveler Corporation changed its name to WHDH.

with the contract, WHDH returned to the Woodland mill, freight prepaid, thousands of returnable cores in approximately 130 different shipments. The 15,000 tons of newsprint per year which WHDH agreed to purchase under the contract accounted for approximately 17% of the total newsprint production capacity of the Woodland mill and aggregated approximately $2 million dollars during the year 1971, making WHDH the second largest purchaser of newsprint from that mill.

Plaintiff asserts the personal jurisdiction of this Court over WHDH under Fed.R.Civ.P. 4(e) pursuant to the Maine Long Arm Statute, 14 M.R.S.A. § 704. The relevant portion of that statute provides:

Persons subject to jurisdiction

1. Causes of action. Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

A. The transaction of any business within this State;

■ The Supreme Judicial Court of Maine has recently stated that the intent of the Maine Legislature was "to fashion a 'long arm' statute of maximum permissible reach 'to the extent permitted by the due process clause.' " Foye v. Consolidated Baling Machine Co., 229 A.2d 196, 197 (Me.1967); Sohn v. Bernstein, 279 A.2d 529, 538 (Me.1971). Since this Court in this diversity action must accept, as a matter of state law, the Maine Court's construction of the Maine statute, Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1082–1083 (1st Cir. 1973); In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 224 (6th Cir. 1972), the question becomes whether the exercise of jurisdiction over WHDH in the present case offends the due process requirements of the Fourteenth Amendment. Whittaker Corp. v. United Aircraft Corp., *supra;* In-Flight Devices Corp. v. Van Dusen Air, Inc., *supra* 466 F.2d at 225.

■ The parameters of due process with respect to the assertion of jurisdiction over nonresidents are well settled. Due process does not prohibit the exercise of jurisdiction over a nonresident defendant who has established "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and has "purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Within this overall constitutional framework, "[w]hether due process is satisfied must depend . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe Co. v. Washington, *supra*, 326 U.S. at 319, 66 S.Ct. at 160. To determine this, such factors as "the nature and purpose of the contacts, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum, and the convenience and fairness to the parties must be considered." Whittaker Corp. v. United Aircraft Corp., *supra*, 482 F.2d at 1083; In-Flight Devices Corp. v. Van Dusen Air, Inc., *supra*, 466 F.2d at 226; Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968).

■ Applying these criteria, this Court is satisfied that the purposeful activities of WHDH within this State have

been such that it can fairly be said to have invoked "the benefits and protections of [Maine's] laws" and that the maintenance of this suit will not offend "traditional notions of fair play and substantial justice." Clearly, the relationship between WHDH and St. Croix was not, as defendant argues, a "naked buyer-seller relationship," Leesona Corp. v. Concordia Mfg. Co., Inc., 312 F.Supp. 392, 399 (D.R.I.1970), nor was WHDH simply a "passive purchaser," In-Flight Devices Corp. v. Van Dusen Air, Inc., *supra*, 466 F.2d at 233, or a "purchaser who simply places an order and sits by until the goods are delivered," Whittaker Corp. v. United Aircraft Corp., *supra*, 482 F.2d at 1084. Over an 18-year period WHDH has entered into a series of contracts with St. Croix involving the purchase by WHDH of thousands of tons of newsprint, which it necessarily knew was to be produced at St. Croix's Woodland mill. The contracts recited that they were executed in the State of Maine and that Maine law should govern. Pursuant to the contracts, dozens of shipments of newsprint, manufactured in accordance with specifications supplied by WHDH, have been made each month from Woodland to Boston, all shipments being made F.O.B. Woodland, with title passing to WHDH at Woodland, and WHDH has returned thousands of cores to Woodland, at its own expense, for credit. Moreover, since the newsprint was shipped F.O.B. Woodland, with title passing to WHDH at that point, the risk of loss was on WHDH while the shipments were passing through Maine en route to Boston, and, since the returnable cores were shipped from Boston, freight prepaid by WHDH, the risk of loss was also on WHDH while the cores were returning through Maine to Woodland. *See* 11

M.R.S.A. § 2–509. WHDH thus enjoyed the benefits and protections of Maine's laws while the shipments of newsprint and cores were present in Maine, a factor which alone has been held sufficient to support long arm jurisdiction over a nonresident corporation. Electric Regulator Corp. v. Sterling Extruder Corp., 280 F.Supp. 550 (D.Conn.1968); *see* Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 588–589 (2d Cir. 1965). Finally, the substantial interest of the State of Maine in a contract of the magnitude of the present one is self-evident, considerations of the relative convenience and fairness to the parties point to this forum, and the connection between the contract and the present action cannot be doubted. In sum, it seems clear that the extent of WHDH's dealings in this State has been such that it is not unfair to require it to defend the present action in Maine, nor, in light of the long history of prior dealing between the parties, may WHDH legitimately claim surprise at being required to do so. *See* Whittaker Corp. v. United Aircraft Corp., *supra*, 482 F.2d at 1084; In-Flight Devices Corp. v. Van Dusen Air, Inc., *supra*, 466 F.2d at 232–234; Southern Machine Co. v. Mohasco Industries, Inc., *supra*, 401 F.2d at 384–386; Scott Brass, Inc. v. Wire and Metal Specialities Corp., 344 F.Supp. 711 (D.R.I. 1972); Leesona Corp. v. Concordia Mfg. Co., *supra*, 312 F.Supp. at 399–400.

For all these reasons, the Court concludes that the assertion of personal jurisdiction in this case is authorized by Maine Long Arm Statute and does not transgress the due process requirements of the Fourteenth Amendment.

Defendant's motion to dismiss for lack of personal jurisdiction is denied.

It is so ordered.