**A. F. BRIGGS CO.**

v.

**STARRETT CORPORATION.**

Supreme Judicial Court of Maine.

Dec. 4, 1974.

**178**

Preti & Flaherty by Thomas A. Cox, Robert E. Burns, Portland, for plaintiff.

Jensen, Baird, Gardner, Donovan & Henry by W. Scott Carlisle III, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Plaintiff below, A. F. Briggs Co. (Briggs), a Maine corporation, brought an action for breach of warranty against defendant Starrett Corporation (Starrett), a Florida corporation. The Superior Court (Cumberland County) dismissed plaintiff's complaint on the grounds that the defendant lacked "minimal contacts" with the State of Maine and that the exercise of jurisdiction over defendant would offend due process of law. Plaintiff's appeal presents the threshold issues of jurisdiction and the application of Maine's "long arm" statute. We hold that the jurisdiction of the State of Maine properly reaches and includes the defendant; therefore we sustain plaintiff's appeal.

We have no occasion to address ourselves to the merits of plaintiff's complaint. Our sole concern is with the question of personal jurisdiction over the defendant foreign corporation. Initially, the question of jurisdiction must be framed in terms of the defendant's relations with both the plaintiff and the forum State. Then these relations may be tested with regard to their appropriate classification within the ambit of Maine's long arm statute and their constitutional sufficiency.

Starrett's principal place of business is at Tampa, Florida. There is no tangible manifestation of any permanent, continuous connection between defendant and the State of Maine, nor is Starrett authorized to do business in Maine under the provisions of 13-A M.R.S.A. §§ 1201-1202. Starrett does not own any real or personal property and does not maintain any employee, office, telephone, or bank account within the boundaries of our State.

In the fall of 1970 Starrett entered into a business arrangement with Regal Ice Productions (Regal), a Michigan corporation. Starrett agreed to manufacture Regal's Block Ice Maker. For its part, Regal agreed to promote the sale of the ice maker by soliciting prospective industrial and commercial buyers. Starrett was to invoice the buyers and to receive payment; thereupon, it would remit a portion of the payment to Regal as a commission for Regal's sales efforts. Starrett assisted in the preparation of the promotional literature and is identified therein as the manufacturer of the ice maker.

The ice maker was advertised and its sale solicited through a conduit corporation, Information Services for Supermarket Equipment, Inc. (I.S.S.E.).[1] Starrett apparently conveyed sales information to appropriate officers of I.S.S.E., who in turn prepared an Announcement and "Sell-o-gram" boosting the ice maker. It appears that Regal pursued an independent course of solicitation, through instrumentalities other than I.S.S.E.

Plaintiff Briggs, a Portland, Maine, dealer in food services, supermarket equipment, and commercial air conditioning, is a member of I.S.S.E. and was among those solicited by I.S.S.E. in March, 1971. Though Briggs had also received solicitations under separate cover from Regal, Briggs, having decided to purchase a block ice maker, placed its order through I.S.S.E., largely to avail itself of the discount available to I.S.S.E. members. The Briggs purchase order for the ice maker was issued to I.S.S.E. on March 22, 1971 and forwarded to Starrett shortly thereafter.

Further relations between Briggs and Starrett unfolded as follows: Starrett answered Briggs' purchase order with a telephone call to Briggs requesting a 25% down payment. Upon receipt of the down payment, Starrett shipped the block ice maker, freight collect, to Briggs' place of business in Maine. Starrett's invoice followed for the balance due, which Briggs paid in April, 1971.

In the ensuing months, Briggs experienced difficulties in operating the block ice maker. Briggs claimed these difficulties derived from defects in the machine's circulating pump. After an exchange of correspondent, Starrett sent Briggs a new pump in July, 1971, and invoiced Briggs for payment. After further correspondence between the parties, this pump was returned to Starrett and was acknowledged by memorandum as a credit to Briggs' account.

Also in July, 1971, in the midst of these activities, Briggs issued a purchase order

---

1. I.S.S.E. is a distributive corporation designed to secure savings for its stockholders in the purchase of supermarket equipment. I.S.S.E. may elect to place a list of its stockholder-members at the disposal of manufacturers and their sales representatives. The manufacturer thus acquires a broad compass for commercial solicitation; in return, I.S.S.E. receives a reduced manufacturer's price, which I.S.S.E. passes on to its stockholder-members.

to I.S.S.E. for the purchase of a Starrett Ice Merchandiser. Starrett had not overtly solicited Briggs for this sale. Starrett invoiced Briggs for the price of the ice merchandiser and shipped it to a designated address in Maine. After unsuccessful attempts at collection, on May 25, 1972 Starrett wrote off the Briggs account on the ice merchandiser as a bad debt.

Altogether, the 1971–72 dealings between Briggs and Starrett involved purchase and sale of two commodities, at least 15 separate pieces of correspondence, Starrett's collaboration in several solicitations, and Starrett's shipment of the goods to Briggs in Maine. Briggs' breach of warranty action in the case before us relates only to the sale of the block ice maker; that is the cause that Briggs put in issue by its complaint filed June 23, 1972. Plaintiff seeks damages amounting to $4,039.39.

The record discloses that Starrett engaged in some business activities in Maine other than the two sales to Briggs already discussed. Between 1966 and 1971, Starrett solicited at least two other Maine firms and sold to them, on three separate occasions, a total of six ice merchandisers. These sales were negotiated by correspondence or telephone and were completed by Starrett's shipping the goods to the appropriate Maine address.

Within this factual context, we must now determine whether Maine may properly exercise personal jurisdiction over the defendant foreign corporation. Defendant contends that any exercise of jurisdiction under Maine's long arm statute would violate standards of due process under the United States Constitution. Thus we must have resort to the language of the long arm statute, and in the application of that statute we must meaningfully satisfy the requirements of due process of law.

The Maine long arm statute, 14 M.R.S.A. § 704, reads in pertinent part as follows:

1. Causes of action. Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits said person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

> A. The transaction of any business within this State;
>
> B. The commission of a tortious act within the State resulting in physical injury to person or property; . . .

In enacting the long arm statute the Maine legislature intended to fashion a statute of maximum permissible reach to the extent permitted by the due process clause. *Foye v. Consolidated Baling Machine Company*, Me., 229 A.2d 196, 197 (1967). Still, even if the Maine long arm statute extends its reach to the very limits of due process, an inquiry to determine the existence of jurisdiction must start by recourse to the language of our statute. In previous interpretations of the long arm statute, we have given attention to the statute's wording, particularly with regard to § 704(1)(B). *Foye*, supra, 229 A.2d at 198; *Sohn v. Bernstein*, Me., 279 A.2d 529, 537–538 (1971). The statutory language can not be disregarded in a quest for a generalized due process. Initially, the facts at hand must be applied to the statute; then considerations of due process as enunciated by the United States Supreme Court must be satisfied. See generally *Foye*, supra, 229 A.2d at 198–200; *Forbes v. Wells Beach Casino*, Me., 219 A.2d 542, 544 (1966).

Although plaintiff contends that jurisdiction over defendant could be founded on either § 704(1)(A) or (B), the main force of plaintiff's argument is that defendant Starrett transacted business in Maine within the scope of § 704(1)(A). Since we agree with this argument and posit jurisdiction on Starrett's transaction of business in Maine, there is no need to address our-

selves to any question regarding whether an action sounding in breach of warranty may qualify as a tortious act within the scope of our long arm statute. Accordingly, the construction of § 704(1)(B) is not before this Court and is not the subject of this decision.

The language of § 704(1)(A) sustains jurisdiction as to any cause of action arising from the transaction of any business in Maine. Since the passage of the long arm statute in 1959, only one case has been before this Court where it was necessary to determine jurisdiction under § 704(1)(A). In Forbes v. Wells Beach Casino, supra, we held that where an individual nonresident was one of two stockholders owning the entire stock of a Maine corporation, and where this nonresident came to Maine to sign a contract made in Maine relating to a Maine corporation, and joined as a party in litigating the validity of the contract in the courts of Maine, the nonresident defendant had transacted business in Maine within the meaning of § 704(1)(A) and was properly subject to personal jurisdiction in an action pertaining to the Maine corporation. 219 A.2d at 544. But Forbes was a case where the nonresident's contacts with Maine were substantial; it was not a case of "minimal contacts," and the court had no occasion, and made no attempt, to place the bounds of jurisdiction at a precise point. Id. at 544–545.

■■■ In the case before us defendant Starrett's contacts with Maine are not so substantial as to sustain jurisdiction on the common-law grounds of physical presence, consent, or "doing business". If jurisdiction is to be asserted, Starrett's activities must meet the requirements of our long arm statute. See 1 Field, McKusick & Wroth, Maine Civil Practice § 4.10, at 93 & n. 5 (2d ed. 1970). Particularly, we must be satisfied that the instant case is a "cause of action arising from the . . . transaction of any business within this State." 14 M.R.S.A. § 704(1)(A). In this regard we note that the instant case is a breach of warranty action which relates only to the sale of the block ice maker. It is clear that any breach of warranty that may have arisen, arose as a result of that sale. Therefore the cause of action before us is reasonably connected with or has a proximate relation to the alleged transaction of business in Maine. See Dufour v. Smith & Hamer, Inc., 330 F.Supp. 405, 407 (D.Me.1971); Koplin v. Thomas, Haab & Botts, 73 Ill.App.2d 242, 219 N.E.2d 646, 651 (1966). In this sense the instant case may be compared with Forbes, supra, where the nonresident defendant had transacted the actual business out of which the suit arose. 219 A.2d at 544. It remains to be seen, however, whether the sale of the ice maker and the circumstances relating thereto constitute the transaction of any business in Maine.

■■■ The fact that the sale which gave rise to this cause of action was a single sale of a single commodity does not preclude that sale from being a transaction of business in Maine under the language of our long arm statute. Indeed, long arm statutes framed so as to reach the transaction of "any" business are often referred to and upheld as "single act" statutes. See Annot., 27 A.L.R.3d 397, 414–16 (1969). Still, although the sale of the block ice maker was certainly a single act, we do not found jurisdiction on the assertion of a mere tautology. A determination of the jurisdictional fact of "transacting business" should rest upon an evaluation of both the nature and the quality of the act which is alleged as the basis of jurisdiction. It cannot be expected, and it is not to be desired, that a court will define "the transaction of any business" in such a way as to anticipate all future forms which the transaction of business might assume. Since jurisdiction will always be founded on conduct as a matter of fact, and since the facts of each case are likely to be distinct, it is enough for this Court to elucidate the conceptual and factual bases of each decision that it makes.

■ Here, we find that defendant Starrett substantially participated in commercial solicitation of the Maine market. There then followed numerous communications between plaintiff and defendant in the form of ordinary business activity: invoices, sales receipts, telephone calls, and negotiation of price adjustments and terms of payment. These activities were purposefully aimed at consummating the sale of commercial merchandise. Defendant thereupon shipped the ice maker to the buyer in Maine. After the sale, defendant engaged in extensive communications with the Maine buyer, including ancillary shipments of merchandise, all to consolidate the business arrangements growing out of the sale of the block ice maker. On these facts, we find that defendant Starrett engaged in the transaction of business in the State of Maine within the meaning of our long arm statute and is subject to the jurisdiction of the courts of Maine. We need not determine whether any one of the foregoing activities would, in and of itself, suffice to meet the statutory standard. It may be, given the fluidity of commerce, that dealings less exhaustive than those now before the court would constitute the transaction of business. We do not intend to prescribe a rule that a single sale will be a transaction of business only on a showing of the facts evinced in this case.

That the conduct of the defendant constitutes the "transaction of any business" is confirmed not only by the holdings of our Court, but by reason of the practice of other states to which our Court on earlier occasions has referred with approval. For example, in *Forbes,* supra, 219 A.2d at 544, this Court referred to the careful review and consideration given to the "transaction of any business" provision of a long arm statute in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, 24 A.L.R.3d 508, cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). In *Longines-Wittnauer,* the New York Court of Appeals held that a New York corporation

may maintain an action in breach of warranty, arising out of the sale of industrial machinery, against a Delaware corporation with its main place of business in Illinois. Jurisdiction was founded on the foreign corporation's "transaction of any business" in the forum State. There the foreign corporation engaged in substantial preliminary negotiations during a period of two months, actually executed a contract, and shipped two specially designed machines for use in the forum State. The liberal statutory criterion was held to be satisfied. 261 N.Y.S.2d at 19, 209 N.E.2d at 75. Although in *Longines-Wittnauer* the foreign corporation had sent its agents into the forum State subsequent to the sale in an effort to resolve the technical insufficiency of the machinery, the Court of Appeals did not emphasize the physical presence of the foreign corporation as the touchstone of jurisdiction. Indeed, the court recognized that isolated transactions which had substantial connection with the forum state would be a proper basis for jurisdiction, apart from any theory regarding the foreign corporation's physical presence or implied consent to jurisdiction, 261 N.Y.S.2d at 15-16 & n. 4, 209 N.E.2d at 72-73 & n. 4, so long as the forum's exercise of the inherent power of jurisdiction over nonresident defendants was compatible with the requisites of due process. Thus, in Singer v. Walker, a companion case decided simultaneously with *Longines-Wittnauer,* the Court of Appeals held that the shipment of substantial quantities of a certain product, pursuant to the foreign manufacturer's regular solicitation of the New York market, constituted the transaction of business in New York.

■ We also find persuasive the case of Quigley v. Spano Crane Sales and Service, Inc., 70 Wash.2d 198, 422 P.2d 512 (1967), cited to us by plaintiff. In *Quigley,* the Supreme Court of Washington, construing a statute identical, in material part, to that of Maine, upheld the exercise of jurisdiction over a foreign corporation found to be transacting business in

Washington. The cause of action sounded in breach of warranty and arose from the sale of a crane by the defendant foreign corporation to the plaintiff, a Washington resident. The foreign corporation in *Quigley* had but few, and limited, contacts with the forum state. At most, the foreign corporation had engaged in occasional solicitation of prospective buyers by mail or sales representative, infrequent sale and shipment of its products, and isolated entry by service representatives to maintain products sold. Although *Quigley* can be distinguished from the instant case by reason of the physical entry of the foreign corporation's agents into the forum State, there was no physical entry of either sales or service representatives with relation to the sale that was the basis of jurisdiction in *Quigley.* The *Quigley* court did not even mention the aspect of physical presence when framing its holding as to the transaction of business. Rather, the court emphasized the foreign corporation's solicitation of business in the forum, the formation by telephone of a contract to be performed in the forum, and the shipment of goods pursuant to the contract. 422 P.2d at 515. Also, the *Quigley* court prescinded from the totality of the foreign corporation's contacts by holding that the circumstances comprising the single sale were sufficient to satisfy the statutory requirement of transacting business. Id. See also Koplin v. Thomas, Haab, & Botts, supra, 73 Ill.App.2d at 252–255, 219 N.E.2d at 651–652. In the instant case, the fact that Starrett or its agents were not physically present in Maine does not undo the consequences which arose from Starrett's transacting business in the forum. And in the context of due process, an inflexible requirement of physical presence might contribute but little to an analysis of the fairness of an exercise of jurisdiction in a given case.

Accordingly, we hold that the sale of the block ice maker in the instant case may be deemed a transaction of business in Maine within the purview of our long arm stat-ute. It remains to consider whether the exercise of jurisdiction over the defendant nonresident corporation is compatible with principles of due process.

██ Due process requires that the nonresident defendant have minimum contacts with the forum State to make the exercise of jurisdiction reasonable and just according to traditional conceptions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 101 (1945). This Court has accepted and applied this fundamental tenet of due process with the awareness that every exercise of jurisdiction must be justified by and reconciled with the factual conduct of the parties. *Foye,* supra, 229 A.2d at 199–200; *Forbes,* supra 219 A.2d at 544–545. In McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L. Ed.2d 223, 226 (1957), the Supreme Court held that a single transaction, even as slight as the mailing of a letter, could be a sufficient contact, in an appropriate case, to warrant the exercise of jurisdiction over a nonresident defendant. Though *McGee* was by its nature concerned with contracts of insurance, see, e. g., Annot., 27 A.L.R.3d 397, 410 n. 12 (1969), this Court has rejected, by implication, any view that would limit the single act basis of jurisdiction to regulated industries such as insurance. See *Foye,* supra, 229 A.2d at 200; *Forbes,* supra, 219 A.2d at 544–545. We believe that our minute and detailed parsing of the factual components of the instant sale, in order to satisfy the requirements of our long arm statute, demonstrates that defendant Starrett's transaction of business manifested sufficient contacts with Maine to satisfy the purposes of due process.

Beyond sufficient contacts, the due process considerations elaborated by *International Shoe,* supra, require that the exercise of jurisdiction satisfy traditional concepts of fair play and substantial justice. Of course, an appeal to "fairness" in a hotly litigated dispute may seem both amorphous and quixotic. Issues commonly

have at least two sides. Yet some exposition of the fairness and reasonableness of the proposed exercise of jurisdiction is essential, because fairness is at the heart of due process. Indeed, the doctrine of *International Shoe* in the final analysis turns on the question of fairness, since the minimum contacts of the nonresident defendant with the forum are to be appraised according to "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. These concepts received their most recent formulation by the Supreme Court in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958), where the Court sought to distill the logic and policy of the "minimum contact" rule:

> The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

See *Foye,* supra, 229 A.2d at 200; *Forbes,* supra, 219 A.2d at 544.

■ The requirement of purposeful action ensures that the nonresident defendant is not burdened with litigation in a foreign jurisdiction unless he has done something in a purposeful manner or with such knowledge as to make his deeds the equivalent of purposeful action. In-Flight Devices Corp. v. VanDusen Air, Inc., 466 F.2d 220, 226 (6th Cir. 1972). The great danger to be avoided is that the unilateral activity of those who claim some relationship with a nonresident defendant may drag the defendant unawares into litigation in the forum State. See *Hanson,* supra, 357 U.S. at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298. Moreover, the nonresident's purposeful act must be one that invokes the benefits and protections of the laws of the forum. Id. Jurisdiction will not be asserted unless the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968).

In the instant case, Starrett purposefully availed itself of the privileges of conducting activities within the State of Maine. Extensive, active solicitation, plus negotiations with Maine residents, plus shipment of goods to Maine, culminate not only in purposeful activities but in a material invocation of the benefits and privileges of the Maine market. Certainly, at any point in the transaction of business, defendant could have entered the forum State and sought to enforce any legal obligations protected by its laws. See Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1234 (5th Cir. 1973). Less importantly, the absence of F.O.B. terms from the conditions of carriage imposed by defendant would indicate that while the block ice maker was travelling in Maine the risk of its loss was on the defendant-seller, according to the Maine law, 11 M.R.S.A. § 2–509(1)(b); thus, the benefits and protections of Maine law applied to this aspect of the sale. See Georgia-Pacific Corp. v. WHDH Corp., 374 F.Supp. 1076, 1079 (D. Me.1974).

■ Neither can defendant be heard to claim that it was unfairly surprised or oppressed by the emergence of litigation in the Maine forum as a result of the transactions described in the instant case. Although defendant's relations with plaintiff Briggs were not so prolonged as to ripen into a course of dealing or a continuing business relationship, see, e. g., *Georgia-Pacific,* supra, 374 F.Supp. at 1079, still, the sale of six of defendant's products, within five years, to other customers in the Maine market must be taken as evidence of defendant's purposeful activities in connection with the forum State, as must the sale of the ice merchandiser that accompanied Starrett's dealings with plaintiff Briggs. These sales were not random or adventi-

tious. They bespeak defendant's intent or capacity to participate in the Maine market. In the context of due process, such a history of interstate sales in and affecting the forum State is indicative of the defendant's reasonable expectation that it may be involved in litigation outside its home base. *In-Flight Devices*, supra, 466 F.2d at 220; cf. *Jetco Electronic*, supra, 473 F.2d at 1234.

We conclude, then, that the interest of the State of Maine in the instant case, as expressed both by the policy of Maine's long arm statute and by our consideration of due process, warrants the exercise of personal jurisdiction over the defendant nonresident corporation. The "fairness" involved on the threshold issue of jurisdiction partakes, in part, of the relative convenience of the parties. Inevitably, the exercise of jurisdiction over the defendant imposes the burden and expense of defending litigation in a foreign State. We have weighed the hardship involved, for a portion of hardship inheres in our decision. If plaintiff, a corporate resident of Maine, has no forum here, then plaintiff must go to Florida. In our judgment, defendant's purposeful activities have made it commercially foreseeable and reasonable that defendant be held amenable to the courts of the forum State. We do not think that plaintiff's unilateral conduct has subverted the sufficiency of defendant's contacts with Maine. Both sections of our long arm statute, 14 M.R.S.A. § 704(1)(A) & (B) were fashioned for the maximum permissible reach to the extent permitted by the due process clause. *Foye*, supra, 229 A.2d at 197. In the instant case, the limits of due process are neither approached nor transgressed.

The entry must be:

Appeal sustained.

All Justices concurring.