**CIVES CORPORATION, Plaintiff,**

v.

**AMERICAN ELECTRIC POWER COMPANY, INC., American Electric Power Service Corporation, and Appalachian Power Company, Defendants.**

**Civ. No. 80–0237 P.**

United States District Court,
D. Maine.

Nov. 5, 1982.

Loyd M. Starrett, Donald R. Ware, Terry S. Kogan, Foley, Hoag & Eliot, Boston, Mass., Ralph I. Lancaster, Louise Thomas, Portland, Maine, for plaintiff.

William S. Harwood, Howard H. Dana, Jr., Verrill & Dana, Portland, Maine, Steven J. Glassman, David Klingsberg, Gerald Sobel, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Chief Judge.

Defendants American Electric Power Company, Inc. (AEP), American Electric Power Service Corporation (AEP Service) and Appalachian Power Company (Appalachian) have timely filed written objections to the report and recommendation of the United States Magistrate that defendants' motion to dismiss the complaint for lack of personal jurisdiction over defendants and for improper venue be denied. *See* 28 U.S.C. § 636(b)(1). For the reasons to be stated, the Court sustains defendants' objection to the Magistrate's recommendation that defendants' motion to dismiss for lack of personal jurisdiction over defendants be denied, and grants defendants' motion to dismiss the complaint for lack of personal jurisdiction.

## I. The Facts

The essential facts are not disputed. Plaintiff Cives Corporation is a Delaware corporation, with its principal place of business in Atlanta, Georgia. AEP and its wholly-owned subsidiary, AEP Service, are New York corporations, with their principal places of business in New York City. Appalachian, also a wholly-owned subsidiary of AEP, is a Virginia corporation, which has its principal place of business in Roanoke, Virginia. None of the defendants has an office in Maine, and none of the defendants is licensed to do business or does business in Maine.

In 1978, the general manager of plaintiff's Electrical Division, then located in Auburn, Maine (the assets of which have been since sold to others), both visited the New York office of AEP Service, and on August 2, 1978, wrote to AEP Service in New York to solicit work on several projects to be performed outside of Maine, specifically including electrical work at an Appalachian coal handling facility, the Mountaineer Plant, being constructed in West Virginia. On October 24, 1978, AEP Service mailed to plaintiff in Maine the specifications for the Mountaineer project and invited a bid on the electrical work. Subsequently plaintiff's personnel attended a pre-bid meeting in West Virginia, and on November 27, 1978, plaintiff mailed to AEP in New York a written proposal for performance of the work. There followed numerous written and telephone communications between plaintiff in Maine and AEP Service in New York. On at least one occasion plaintiff's Electrical Division general manager again visited the New York office of AEP Service and apparently plaintiff's personnel also went to West Virginia, but no representative of defendants ever visited plaintiff in Maine. During this period plaintiff's personnel in Maine spent some 700 man hours preparing a final bid for the project. In January 1979 plaintiff mailed its final revised proposal to AEP Service in New York, where it was accepted by Appalachian. A contract was signed by AEP Service in New York, was mailed to plaintiff in Maine, and was there signed by

plaintiff on March 2, 1979. The contract explicitly provided that it was to be governed by New York law.

The work required by the contract involved the installation of electrical equipment at the Mountaineer Plant in West Virginia. Plaintiff began the project in 1979 and finished in July, 1980. While working on the project, plaintiff rented a building for office space and maintained a post office box near the job site in West Virginia. Approximately 175 electrical workers were ultimately employed by plaintiff from the local West Virginia labor force and some 220,000 hours of labor were expended by its employees on the Mountaineer Plant project in West Virginia. AEP made monthly payments by check mailed to plaintiff in Maine from Appalachian's office in Roanoke. No officer or employee of any defendant ever visited plaintiff in Maine. The only communications between defendants and plaintiff in Maine were by mail or telephone.

On August 8, 1980, plaintiff brought the present diversity action in this Court, seeking damages for breach of contract and alleged tortious conduct. On August 15, 1980, defendants filed the instant motion to dismiss, supported by the affidavits of the assistant secretary of Appalachian and the project manager of AEP Service. Plaintiff has responded with an affidavit of its Electrical Division general manager. The motion has been fully briefed and argued.

## II. The Law

It is undisputed that the relevant Maine "long arm" statute, 14 M.R.S.A. § 704–A, extends jurisdiction over nonresident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Tyson v. Whitaker & Son, Inc.,* 407 A.2d 1, 3 (Me.1979); *Labbe v. Nissen Corp.,* 404 A.2d 564, 569 (Me.1979).[1] The question here presented, therefore, is whether the assertion of personal jurisdic-tion over these defendants transgresses the due process requirements of the Fourteenth Amendment. *Whittaker Corp. v. United Aircraft Corp., supra,* 482 F.2d at 1083; *Georgia-Pacific Corporation v. WHDH Corp., supra,* 374 F.Supp. at 1078.

The traditional point of departure in a determination of whether the exercise of jurisdiction over a nonresident defendant comports with due process is the basic legal standard set forth by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945):

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

The *International Shoe* "minimum contacts" standard was refined further by the Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), where the Court held that for "minimum contacts" to exist, there need be demonstrated "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1239.

More recently, the Supreme Court has further elaborated on the *International Shoe* "fairness" standard in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), where it wrote:

> The relationship between the defendant and the forum must be such that it is 'reasonable ... to require the corporation to defend the particular suit which is brought there.' Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while

---

1. The Maine Court's construction of the Maine statute must control, as a matter of state law, in this diversity action. *Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079, 1082–3 (1st Cir.1973); *Georgia-Pacific Corporation v. WHDH Corp.,* 374 F.Supp. 1076, 1078 (D.Me. 1974).

always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 292, 100 S.Ct. at 564 (citations omitted). *See also Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980); *Keeton v. Hustler Magazine, Inc.,* 682 F.2d 33, 34 (1st Cir.1982); *Whittaker Corp. v. United Aircraft Corp., supra,* 482 F.2d at 1083; *Seymour v. Parke, Davis & Co.,* 423 F.2d 584, 586–87 (1st Cir.1970).

■ Applying these criteria to this case, the Court is persuaded that the contacts between defendants and the State of Maine are so minimal that it would not be reasonable to require them to defend this action in this forum. In the first place, none of the defendants has an office in Maine; none of the defendants is licensed to do business in Maine or does business in Maine; no officer or employee of any defendant visited Maine in connection with the instant contract; and the only communications between defendants and plaintiff in Maine were by mail or telephone.[2] In the second place, none of the factors listed by the Supreme Court in *World-Wide Volkswagen* support the exercise of jurisdiction over defendants in this case. First, Maine's interest in adjudicating the dispute is virtually nonexistent; while plaintiff's Electrical Division was located in Maine, that Division has since been sold. Second, plaintiff surely should be able to obtain convenient and effective relief elsewhere; plaintiff no

longer has an Electrical Division in Maine, its principal office is in Georgia, and the action could certainly be pursued in another forum more convenient to all the parties. Finally, the interstate judicial system's interest in obtaining the most efficient resolution of this controversy between a nonresident plaintiff and nonresident defendants, which is almost certainly governed by the law of a State other than Maine, would not seem to be served by litigation here.

■ Plaintiff makes much of the 700 man hours it spent preparing its bid for the project. But a plaintiff's unilateral performance within the forum state is insufficient to support the exercise of personal jurisdiction over nonresident defendants. *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 655 (8th Cir.1982); *Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc.,* 597 F.2d 596, 603 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). This is not a case where defendants actively supervised or even closely or continuously monitored plaintiff's performance within the forum State. *See, e.g., Whittaker Corp. v. United Aircraft Corp., supra.* The work required by the contract was performed in West Virginia. The simple fact is that defendants' contacts with Maine were limited to the telephone and the mail.

Because the exercise of jurisdiction over defendants in the present case would offend "traditional notions of fair play and substantial justice" in violation of the Due Process Clause of the United States Constitution, it is

ORDERED that defendants' objection to the Magistrate's recommendation that defendants' motion to dismiss the complaint for lack of personal jurisdiction be denied is SUSTAINED; that defendants' motion to dismiss the complaint for lack of personal jurisdiction is GRANTED; and that the

---

2. This Court is aware, of course, that a State may assert jurisdiction over a nonresident defendant consistently with due process even though that defendant has never set foot in the forum state. *See, e.g., Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.,* 557

F.2d 886 (1st Cir.1977). In the present case, however, not only were defendants never physically present in Maine, but the contacts between defendants and Maine are simply too insubstantial to allow the exercise of personal jurisdiction over them.

Clerk of this Court shall enter judgment DISMISSING the action without prejudice and with costs.