**HOWELL LABORATORIES, INC., Plaintiff,**

v.

**CLEAR CHANNEL COMMUNICATIONS, INC., Defendant.**

**Civ. No. 90–240.**

United States District Court, D. Maine.

Nov. 27, 1990.

---

Gregory D. Woodworth, Pierce Atwood Scribner Allen Smith & Lancaster, Portland, Me., for plaintiff.

James Goggin, John A. Mitchell, Verrill & Dana, Portland, Me., for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

GENE CARTER, Chief Judge.

In this contract action, Defendant, the purchaser of an antenna manufactured by Plaintiff, has moved to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). When a motion is made under Rule 12(b)(2), the plaintiff has the burden of proving that jurisdiction exists. *Kowal-*

*ski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir.1986). If the motion is decided on written submissions, the plaintiff need only make out a *prima facie* case, and plaintiff's written allegations of jurisdictional facts are construed in its favor. *Id.; see also* 2A Moore's Federal Practice at ¶ 12.07[2.–2]. Thus resolving all disputes in favor of Plaintiff, the facts derived from the pleadings and affidavits in this case are as follows.

According to the complaint, Defendant is a Texas corporation. It does not have a place of business in Maine and never has been licensed to do business in Maine. Defendant does not advertise or solicit business in Maine and does not provide any service in or send any product into the State of Maine.

Plaintiff is a Maine corporation which manufactures and sells radio antennas and accessories. Shively Labs is a division of Plaintiff located in Bridgton, Maine. Shively manufactured the antennas for which Plaintiff now seeks payment at its plant in Maine. Since 1981, Defendant, Clear Channel Communications, Inc., has placed eight orders for antennas and related equipment with Shively, excluding the contracts that are the subject of this lawsuit. John Furr, Defendant's Director of Engineering, communicated the orders directly to Shively in Maine, but most of the purchase orders were sent to Dyma Engineering, which is Plaintiff's exclusive distributor in the Southwest. Dyma is located in New Mexico. Most of the invoices for the Shively equipment and services were also sent by Dyma to Defendant. Documentation for one transaction, however, was provided by Shively. Defendant provided specifications for the equipment directly to Shively and negotiated the prices of the orders directly with Shively. Defendant also negotiated with Shively about buying other products which it did not ultimately purchase.

This lawsuit arises out of the sale to Defendant of two Shively antennas and attendant equipment and services. Defendant asked Shively directly, by telephone, for a price quote for a ten bay side-mount

antenna. Shively provided a detailed quotation. Defendant then ordered the products from Dyma, and the purchase and sale contract was executed in Texas. The complaint alleges that two of the actual contracts in dispute in this case were between Defendant and Dyma, which has now assigned its rights to Plaintiff.[1] Most of the negotiations regarding specifications, product capabilities, delivery dates and installation were held between Defendant and Shively employees. However, some negotiations were conducted with Ernie Hart, a Dyma engineer, who made many visits to Texas to inspect and approve installation of the products. Defendant's John Furr visited the Shively plant twice after the first of the currently disputed contracts was executed, in order to observe test patterns on the antenna which had been ordered. Shively delivered the antenna directly to Defendant.

After delivery, John Furr telephoned Shively asking for a quote for a different antenna. He sought to return the first antenna and receive credit toward the purchase of the new antenna. Defendant and Shively conducted extensive negotiations on this transaction on the telephone and in writing. The antenna was ordered through Dyma for January 1, 1989 delivery, and the antenna and other equipment were shipped to Defendant in March 1989. Interim complaints about Shively's timely performance of contract terms were made directly by Defendant to Shively, and Shively personnel responded directly to Defendant. Defendant requested that Shively provide technical assistance in the assembly and installation of the new antenna. Shively sent three men to Texas to provide the requested assistance. The invoices for their services were sent to Defendant by Dyma. Payment for all goods and services rendered by Shively and invoiced by Dyma was made to Dyma.

Maine's long-arm statute, 14 M.R.S.A. § 704–A, permits the exercise of jurisdiction over nonresidents to the same extent allowed by the Fourteenth Amendment of the Constitution. *Caluri v. Rypkema,* 570 A.2d 830 (Me.1990). Under the Fourteenth Amendment, the Court must ask "whether the defendant purposefully established 'minimum contacts' in the forum State," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), and whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (*quoting World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). If the suit arises out of or relates to the defendant's forum contacts, it is a case of specific jurisdiction which requires simply that the relationship among the defendant, the forum and the litigation form a fair and reasonable foundation for the exercise of jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–416, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984).

For purposes of determining minimum contacts, the Court of Appeals for the First Circuit distinguishes between active and passive out-of-state purchasers, "evinc[ing] a special concern for formulating a jurisdictional rule that would protect wholly passive purchasers who do no more than place an order with an out of state merchant and await delivery." *Bond Leather Co. v. O.T. Shoe Manufacturing Co.,* 764 F.2d 928, 931–32 (1st Cir.1985); *L & P Converters, Inc. v. H.M.S. Direct Mail Service, Inc.,* 634 F.Supp. 365, 366 (D.Mass.1986).

Defendant is plainly not a wholly passive purchaser. The situation presented on the record now before the Court is, however, unusual. Defendant has had a long and reasonably active business relationship with Shively despite the fact that most of the actual contracts for Shively products and services have been made with Dyma, with which Defendant also appears to have had an active business relationship. In a contract action in which the subject agreements had been made outside the forum

---

**1.** Counts V and VII relate to contracts or transactions between Plaintiff and Defendant apparently not involving, or unmediated by, Dyma.

state between an out-of-state purchaser and a forum manufacturer, *Whittaker Corporation v. United Aircraft Corp.*, 482 F.2d 1079, 1083–84 (1st Cir.1973), the court found sufficient minimum contacts for the assertion of jurisdiction by the forum state where (1) Defendant had provided specifications and work statements governing Plaintiff's work, and the production had taken place in the forum state; (2) Defendant had solicited pre-contract activity by Plaintiff and the parties had a five year history of prior dealing; (3) Defendant's personnel informed others they could buy from Plaintiff and urged Plaintiff to supply other purchasers; (4) Defendant's personnel regularly communicated with Plaintiff's personnel in the forum both before and after agreements had been reached; and (5) Defendant's personnel frequently visited Plaintiff's forum facility. This case is not identical to *Whittaker*, particularly because here not all of the alleged contracts run directly between the parties and because Defendant in *Whittaker* actually participated in the development of a new product by the forum manufacturer. There are enough similarities, however, for the Court to find *Whittaker* compelling precedent.

Specifically, prior to the subject dispute in this case, the parties had an eight year history of prior dealing. Defendant had placed orders directly with Shively and had negotiated extensively with Shively. There was significant written and oral communication between the parties, and Plaintiff conformed its manufacture of products in Maine to specifications provided by Defendant. This pattern of activity continued during the transaction resulting in the currently disputed contracts, with discussions being held between the parties on specifications, product capabilities, delivery dates

and installation. Although Defendant's personnel did not visit Maine frequently, its Director of Engineering visited once before delivery of the product. The Court, finds therefore, that Defendant had minimum contacts with the State of Maine.[2]

■ The Court must now examine the relationship among the defendant, the forum and the litigation to see if it forms a fair and reasonable foundation for the exercise of jurisdiction over the defendant. *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872; *Smirz v. Fred C. Gloeckner & Co.,* 732 F.Supp. 1205 (D.Me.1990). A defendant such as this one, who has purposefully directed his activities at forum residents has the burden of showing, by a "compelling case," that the exercise of jurisdiction would be unreasonable. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. Apart from attempting in its affidavits to minimize its contacts with Maine, Defendant has not put forth any evidence that exercise of jurisdiction would be unfair.

The Court finds on the record before it that its exercise of jurisdiction is neither unfair nor unreasonable. Defendant has been an active participant in the economy of Maine over a long period of time. *Id.* Given the prior course of dealing between the parties, Defendant may not claim surprise at being expected to appear in this forum. *Whittaker,* 482 F.2d at 1084. Moreover, the negotiations with Maine residents and the solicitation of goods and services here indicate a "material invocation of the benefits and privileges of the Maine market." *A.F. Briggs Co. v. Starrett Corp.,* 329 A.2d 177, 184 (Me.1974). Certainly, Defendant could have entered the forum State and sought to enforce any legal obligations protected by its laws.[3] *Id.*

---

**2.** The Court finds this case much different from *L & P Converters,* 634 F.Supp. 365. In that case brought to recover monies for paper sold and delivered, the Court found the defendant buyer to be a classic passive purchaser despite the fact that the parties had engaged in forty transactions over the course of four years. The court specifically distinguished that case from one in which there might be "any evidence of continuous negotiations between the parties, either over the phone, by mail, or in Massachusetts." *Id.* at 366. Here, such extensive negotiation is

present. This Court notes, too, that antennas are products requiring a certain amount of customization and attendant service, which gives rise to a more active relationship between the parties than does a sale of slab paper.

**3.** These obligations, of course, depend on the nature of the contracts and agreements among the parties, issues which will be decided at another time. The Court has seen invoices, but it has not seen other contractual material if it exists, and the nature of the relationship be-

It does not seem unfair, therefore, for Defendant to be haled into Court in Maine.[1]

Accordingly, it is ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is hereby DENIED.[5]

SO ORDERED.

tween Dyma and Plaintiff has not been fully developed. Construing the facts before the Court in the light most favorable to Plaintiff, as the Court must on this motion, Defendant might have been able to sue in Maine on promises made by Shively or on the contract between itself and Plaintiff, which Plaintiff alleges and Defendant claims did not exist.

4. The other factors often considered in this analysis lend little support to the argument for Defendant. Maine has the usual interest in seeing that its corporations are paid for the goods and services they provide. Moreover, Maine is as convenient and efficient a forum as any since the witnesses are likely to come from Maine, Texas, and New Mexico. *Cf. Cives Corp. v. American Electric Power Corp.*, 550 F.Supp. 1155, 1158 (D.Me.1982) (Maine's interest in adjudicating dispute virtually nonexistent where Plaintiff has left Maine).

5. The Court is aware that many of the facts on which this ruling is based are disputed. Although Plaintiff has made out its *prima facie* case, it will, of course, have to prove jurisdiction by a preponderance of the evidence at trial.